**UNITED STATES of America**

**v.**

**William GETZ and Ossville Stocker.**

**Crim. No. 74–80.**

United States District Court,
E. D. Pennsylvania.

July 24, 1974.

**44**

George A. Hahalis, Bethlehem, Pa., Mark S. Refowich, Easton, Pa., for defendants.

Alan Lieberman, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Defendants were arrested while enjoying a glass of beer at the Old Stone Inn, approximately forty-five minutes after the Cement National Bank was robbed. Following their arrest, defendants were indicted and tried as the perpetrators of the bank robbery. The jury found defendants guilty on all counts of the indictment and presently before the Court are defendants' motions for judgment of acquittal and for a new trial, which raise arguments in three principal areas.

### A.

First, defendants contend that their appearance at trial in clothing matching the description of the alleged bank robbers was sufficiently prejudicial as to deny them their right to a fair trial. Defendant Getz appeared at trial in a grey sweatshirt and grey pants, while Stocker appeared in a light green

sport shirt open at the collar and dark pants. This, therefore, is not the situation where a defendant was forced to go to trial in clothes "reasonably identifiable" as prison clothing. The Court of Appeals recently held that, absent waiver, the trial of a defendant in prison clothing constitutes a denial of the due process right to be presumed innocent until proven guilty. Lemons v. United States, 489 F.2d 344, 345 (3d Cir. 1974); Gaito v. Brierley, 485 F.2d 86 (3d Cir. 1973). Here, defendants appeared at trial in the street clothes they were wearing at the time of arrest. Defendants seek to impose an affirmative duty upon the Government to provide defendants with a new suit of clothing for trial. Defendants have cited no decisions in support of this novel proposition and we decline to impose such a burden on the Government. Moreover, we find little merit in defendants' claim that they were prejudiced by appearing in clothing matching the description of that which the bank robbers wore. The Government did not require defendants to so appear at trial. Even assuming that the Government did require defendants to dress in clothing which was worn during the bank robbery, this would have been permissible in order to facilitate identification. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); United States v. Gaines, 450 F.2d 186, 194–196 (3d Cir. 1971). Moreover, the Government made no attempt to draw any parallel or comparison between the descriptions of the purported bank robbers and the clothing which defendants were wearing at trial. Accordingly, we conclude defendants were not prejudiced by the Government's failure to provide different clothing for trial.

### B.

Defendants' second ground asserted in support of their motion concerns the evidence which was subject to their suppression motions, to wit, a shopping bag containing $27,000 in cash, weapons, masks and wigs. Following a suppression hearing, defendants' motions were denied and the case proceeded to trial. In support of their motions, defendants raised two principal arguments.

Initially, defendants argued that the arrest of defendants at the Old Stone Inn and the search and seizure made pursuant thereto were illegal in that the arrest and search were made by Easton police, who were outside their jurisdiction and who were not in "hot" pursuit. In support of this argument, defendants relied on 19 P.S. § 11, which provides in pertinent part:

"Any police officer in the employ of a county, city borough, town or township may arrest, with or without a warrant, any felon . . . beyond the territorial limits of the political subdivision employing such officer for such offense committed by the offender within the political subdivision employing the police officer *if such officer continues in pursuit of the offender after the commission of the offense . . . .*" (emphasis added)

The Old Stone Inn is located in Glendon, Pennsylvania, and there is no question that the Easton police officers made the arrest beyond the territorial limits of their political subdivision. The only issue here is whether Chief Young and Captain Scalzo were in "pursuit" of the offenders within the purview of 19 P.S. § 11. Young and Scalzo first received notice of the robbery at 2:20 P.M. At that time, they immediately dispatched police detectives to the scene, and were themselves enroute to the scene, when a radio dispatch reported that a car answering the description of the getaway car was observed heading south on Route 611. The officers immediately proceeded to Route 611. Upon determining that they had responded to a false alarm, the officers pursued another possible escape route the robbers might have taken. At this time, the officers received a second radio communication to the effect that a car answering the description of the getaway car was sighted parked in Glendon near the Old Stone Inn. The officers crossed the

bridge into Glendon, where they were informed that two men got out of the car and headed in the direction of the Old Stone Inn. Thereafter, Young and Scalzo proceeded to the Old Stone Inn where they arrested the defendants between 2:50 and 2:55 P.M.

■■ Defendants argue that the arrest was invalid because the officers were not in "hot" pursuit. Apparently, defendants contemplate that only a fender-smashing Hollywood style chase scene would satisfy the requirement of the statute. We do not read the act so restrictively. The statute on its face provides only that the arrest may be effected beyond the territorial limits of the officers' jurisdiction so long as "such officer continues in *pursuit* of the offender . . ." It does not specify that the officer must be in "hot" pursuit. The phrase "continues in pursuit" supports the conclusion that the statute contemplates "fresh pursuit". In the instant case, Officers Young and Scalzo were in continuous pursuit of the evasive robbers from the time of the initial communication at 2:20 P.M. until the arrest at 2:55 P.M., a period of time encompassing 35 minutes. The officers proceeded diligently in their search for the fleeing robbers and there was no hiatus or interruption in their efforts. Accordingly, we conclude that the arrest was made beyond the territorial limits of the officers' jurisdiction, while the officers were in pursuit of the felons within the purview of 19 P.S. § 11.

■ The defendants further contended that the arrest was made without probable cause. In passing on a warrantless arrest, the Court must determine whether "at the moment the arrest was made the officers had probable cause to make it—whether at that moment, the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had [been] or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); United States v. Harris, 482 F.2d 1115, 1117 (3d Cir. 1973); United States v. Lampkin, 464 F.2d 1093, 1095 (3d Cir. 1972). In this case, Young and Scalzo left the police station with the knowledge that two males, one of whom was larger than the other, had robbed the Cement National Bank in Easton. The report indicated that both men were wearing wigs, one was wearing sunglasses, and one carried a shotgun. Another report revealed that an automobile fitting the description of the getaway car was recovered 100 to 150 yards away from the Old Stone Inn, a few miles from the scene of the robbery. Upon their arrival, the officers were informed that the occupants of the vehicle fit the description of the two bank robbers and that one of the men was carrying a shotgun. They were further advised that the man, wearing a grey sweatshirt and trousers, was carrying a white shopping bag and that both men were observed heading in the direction of the Old Stone Inn. Upon entering the Inn, the officers observed the defendants sitting together on the far side of the U-shaped bar. Except for the owners and one other employee, defendants were the only inhabitants of the bar at that time. Three to four feet behind the defendants was the shopping bag. Captain Scalzo recognized defendant Stocker as a known felon and engaged him in conversation. Chief Young approached the defendants and observed, in plain view, a wig and currency, in the open bag resting immediately behind defendants. At this point, Young said "This is it; these are the men" and placed defendants under arrest. With the knowledge of the foregoing facts and circumstances, we conclude that this information was sufficient to warrant a prudent man in believing that defendants had committed the bank robbery. Accordingly, the officers had probable cause to make the arrest and, therefore, the search and seizure conducted pursuant thereto was valid. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

### C.

Defendants' final contention attacks the in-court identification of the defendants on two grounds: (1) the photographic display shown to the witnesses was impermissibly suggestive and (2) the newspaper photographs of defendants following their arrest tainted the in-court identification by the witnesses.

Preliminarily, a pre-trial photographic display is not a "critical stage" of a criminal proceeding, which would entitle defendants to respresentation by counsel. United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). A pre-trial identification by photographic display is impermissible ". . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Defendants contend that the photo array was impermissibly suggestive in that defendant Getz is the only person whose photograph revealed disheveled hair and in that defendant Stocker's photograph was the only one of a mulatto. In this case, the displays consisted of ten photographs in addition to those of defendants. The photographs are similar in size and subject-matter. The display was viewed by the witnesses individually, and the agent in no manner suggested or aided the witnesses in the choice of a particular photograph. The only remarkable feature of the photographic display was its ineffectiveness: seven of ten witnesses failed to identify either of the defendants from the photographs and an eighth witness was able to make only a tentative identification of defendant Stocker. On the basis of this testimony adduced at the suppression hearing and of our independent review of the photographic display, we conclude that the photographic display was not impermissibly suggestive.

The second prong of defendants' attack on the in-court identification relates to the possibility that the pre-trial publicity tainted the in-court identifications of the defendants by the witnesses. In this posture, this identical argument was raised in United States v. Zeiler, 470 F.2d 717 (3d Cir. 1972), where the Court of Appeals held:

> "The constitution guarantees an impartial jury. It does not guarantee an impartial witness . . . We long ago abandoned the practice of disqualifying witnesses because of presumed bias. Bias can be examined through cross-examination, and juries are free to disregard biased testimony.
>
> \* \* \* \* \* \*
>
> "To sustain [the] contention that eyewitness identification testimony is inadmissible because of the pretrial publicity would impose on law enforcement officials an affirmative duty to prevent the press from publishing photographs of arrested suspects. Such a holding would raise serious first amendment problems, and we decline to make it.
>
> \* \* \* \* \* \*
>
> "[T]he proper means of testing eyewitness testimony is through cross-examination. The credibility of witnesses' subsequent identifications can be weighed by the jury in light of the witnesses' statements as to their reactions to television or newspaper pictures." (Footnote omitted). 470 F. 2d at 719–720.

Accordingly, defendants' attack on the in-court identifications was appropriately made on cross-examination, leaving to the jury the weight to be assigned those identifications. The witnesses uniformly testified that their identifications were based upon their recollections of the event and not a newspaper photograph of defendants. Thus, under *Zeiler*, defendants' contention is without merit.

### D.

For the foregoing reasons, defendants' motions for judgment of acquittal or for a new trial will be denied.