444 A.2d 149

COMMONWEALTH of Pennsylvania

v.

Walter A. BROWN, Jr., Appellant.

COMMONWEALTH of Pennsylvania

v.

Jerry Lee BANKS, Appellant.

Superior Court of Pennsylvania.

Argued May 26, 1981.

Filed April 12, 1982.

Kevin H. Way, Assistant Public Defender, Williamsport, for appellant at No. 1588.

James R. Protasio, Assistant Public Defender, Mount Carmel, for appellant at No. 1688.

Kenneth Osokow, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and McEWEN, JJ.

WIEAND, Judge:

Jerry Lee Banks and Walter Brown were tried non-jury, convicted, and sentenced for robbery,[1] burglary,[2] and conspiracy to commit a criminal act.[3] Their separate appeals have been consolidated because they raise the same principal issue. That issue is whether evidence obtained by police following appellants' arrests should have been suppressed because Williamsport police officers made the arrests outside the limits of the City of Williamsport. We conclude that the arrests were proper and, finding no merit in appellants' remaining arguments, affirm the judgments of sentence.

On October 14, 1979, at or about 8:45 p. m., police in the City of Williamsport responded to a report that a robbery had been committed at the home of Raymond Hinebauch on Freedom Road. Two elderly victims of the robbery told

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 3502.

3. 18 Pa.C.S. § 903.

police that four men wearing ski caps had perpetrated the crime. They specifically identified one of the appellants, Jerry Banks, by name, for he had previously been known to them. Included in the items taken during the robbery was a purse containing $500. Police scoured the neighborhood but were unable to find the robbers or identify the direction in which they fled. Two units, therefore, proceeded to the residence of Jerry Banks. This was located less than one mile from the Hinebauch home but outside the city limits of Williamsport in Loyalsock Township. The officers drove slowly, making a visual search of the area for the robbers and for evidence that might assist them at a later time. A short distance from the Hinebauch home they found lying in the road a knit ski cap of the type worn by the four men.

Approximately thirty minutes after the initial broadcast had gone out over police radio, the two police vehicles arrived at the Banks home. Through the windows of the house police were able to observe four men, including Banks. One officer knocked on the door; whereupon, Banks responded and opened the door. The officer read *Miranda* warnings to Banks and obtained Banks' consent for the four policemen to enter the home. *Miranda* warnings were thereafter read also to the other three men and their names and addresses were obtained. No further questions were asked, however, pending the arrival of a superior officer.

Several minutes later, Lt. William Miller of the Williamsport Police Department arrived and asked one of the four men with whom he was acquainted, Boyd Beatty, to accompany him outside. While both men sat in a police car, Miller read Beatty his *Miranda* rights, after which Beatty gave a statement implicating the four men. Arrests were made and a search of the persons of the men produced a woman's purse containing twenty $20 bills, a wallet with $45, and a pocket knife. All of the men except Banks waived their *Miranda* rights and gave statements concerning the robbery.

After appellants had been arraigned, omnibus pre-trial motions were filed, consolidated for hearing, and heard before the Honorable Charles Greevy. The hearing, which

consumed six separate sessions between January 17, 1980, and March 3, 1980, resulted in an order denying motions to suppress evidence. This order, it is asserted on appeal, was erroneous. The evidence, it is argued, was obtained as a result of an unlawful arrest.

The starting point for any discussion of extra-territorial arrest [4] must be the statutory authority for "intrastate hot pursuit," contained in 42 Pa.C.S. § 8901.[5] This provision is as follows:

"Any police officer of any political subdivision may arrest with or without warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after commission of the offense. The police officer shall exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision."

All parties agree that the instant offense occurred within Williamsport. They are also agreed that the key to resolution of the issue is the definition of "pursuit." We must

4. The issue of mutual aid agreements has not been raised. Compare: *Commonwealth v. Novick,* 293 Pa.Superior Ct. 241, 438 A.2d 974 (1981).

5. This provision of the Judicial Code is substantially a reenactment of The Act of August 6, 1963, P.L. 511, No. 267, § 1, as amended, Act of November 2, 1973, P.L. 330, No. 109, § 1, 19 P.S. § 11 which reads:
   "Any police officer in the employ of a county, city, borough, town or township may arrest, with or without a warrant, any felon or person who has committed a misdemeanor or summary offense beyond the territorial limits of the political subdivision employing such officer for such offense committed by the offender within the political subdivision employing the police officer if such officer continues in pursuit of the offender after commission of the offense: Provided, however, that a police officer shall exercise only the power of arrest that he would have if he were acting within the territorial limits of the political subdivision employing him."
   This section, originally entitled "arrest beyond territorial limits in pursuit of felon," was amended in 1973 to include summary offenders and misdemeanants. This amendment was in response to the decision of this court in *Commonwealth v. Troutman,* 223 Pa.Superior Ct. 509, 302 A.2d 430 (1973).

decide, therefore, whether the Williamsport police "continue[d] in pursuit of [the felons] after commission of the offense."

We observe initially that 42 Pa.C.S. § 8901 is not a penal statute. Therefore, it should be liberally construed to effect its object and to promote justice. 1 Pa.C.S. § 1928; *Commonwealth v. Fiume*, 292 Pa.Superior Ct. 54, 436 A.2d 1001 (1981); *Commonwealth v. Holderman*, 284 Pa.Superior Ct. 160, 425 A.2d 752 (1981); *Commonwealth v. Robb*, 238 Pa. Superior Ct. 62, 352 A.2d 515 (1975).

"Pursue" is defined as "to follow, usually determinedly in order to overtake, capture . . . ." Webster's Third New International Dictionary, 1968. There have not been a great number of cases dealing with pursuit in this Commonwealth, and those which have been decided are factually clearer than the instant case. See, e.g., *Commonwealth v. Silvers*, 286 Pa.Superior Ct. 161, 428 A.2d 622 (1981) (vehicle matching description given over police radio spotted, officer chased car for five miles with siren on); *Commonwealth v. Holderman*, supra (officer observes traffic violation, follows car short distance); *Commonwealth v. Robb*, supra (car runs red light, policeman follows for one and one-half miles as car is driven erratically).

The instant case is more closely analogous to the decision in *United States v. Getz*, 381 F.Supp. 43 (E.D.Pa.1974). There, police officers from the City of Easton received notice that a bank had been robbed. A radio broadcast indicated that the getaway car had been seen on Route 611; and two officers immediately followed to that route. Seeing no car which answered the description, the officers proceeded to what was believed to be another possible escape route, where they continued their search for the vehicle. A second broadcast was then received, reporting that the car had been parked in the vicinity of an inn in a neighboring township. The officers immediately went to the inn, where the occupants of the vehicle were identified and arrested. The defendants argued that the police had not been in "hot" pursuit of the perpetrators and that the arrest outside the

jurisdiction, therefore, had been illegal. The court responded to and rejected this argument as follows:

> "Defendants argue that the arrest was invalid because the officers were not in 'hot' pursuit. Apparently, defendants contemplate that only a fender-smashing Hollywood style chase scene would satisfy the requirement of the statute. We do not read the act so restrictively. The statute on its face provides only that the arrest may be effected beyond the territorial limits of the officers' jurisdiction so long as 'such officer continues in *pursuit* of the offender . . .' It does not specify that the officer must be in 'hot' pursuit. The phrase 'continues in pursuit' supports the conclusion that the statute contemplates 'fresh pursuit.' In the instant case, Officers Young and Scalzo were in continuous pursuit of the evasive robbers from the time of the initial communication at 2:20 P.M. until the arrest at 2:55 P.M., a period of time encompassing 35 minutes. The officers proceeded diligently in their search for the fleeing robbers and there was no hiatus or interruption in their efforts. Accordingly, we conclude that the arrest was made beyond the territorial limits of the officers' jurisdiction while the officers were in pursuit of the felons within the purview of 19 P.S. § 11."

*United States v. Getz,* id. at 46.

We agree with this interpretation. The language of the statute does not speak of "hot pursuit." Rather, the statute requires that an officer "continue in pursuit" of the offender. This, as the federal court observed, contemplates "fresh pursuit," a term which is considerably more meaningful than "hot pursuit." See: Black's Law Dictionary, where the terms "pursuit" and "hot pursuit" are deemed synonymous with "fresh pursuit."

The facts in the instant case parallel those in *Getz.* In the latter case, the police officers had a description of an automobile; in the instant case, Williamsport police had even more substantial information, i.e., the identity of one of the perpetrators. Although Easton Officers Young and Scalzo could not follow the car from the scene of the crime, they

conducted a visual search of the area for the getaway car, as did the Williamsport police. The *Getz* pursuit took approximately 35 minutes; the pursuit in the instant case lasted approximately 30 minutes. Finally, the officers in *Getz* were well aware that the inn where the car was found was outside of their jurisdiction, but nevertheless proceeded into the neighboring township, parked their car, and entered the inn without calling for assistance from any other police departments. The circumstances dictated that they enter and capture the criminals as quickly as possible. The Williamsport police followed the same procedure: when learning that the suspect's home was outside of the city limits, they nonetheless proceeded there immediately, searching all the while for the four men who had perpetrated the robbery. Upon arrival, they went directly to the door and found Banks at home.

Appellants argue that the instant case differs from *Getz* in that the police knew the identity of a suspect and the location of his residence; and, therefore, it was not essential that they make an immediate arrest without assistance from police having jurisdiction. We disagree. First, the Williamsport police were *not* certain of their final destination, for they did not know whether Banks could be found at home. In fact, other police units had been dispatched to look for Banks in other locations which he was known to frequent. Secondly, there was surely a need to make a swift apprehension. The arresting officer, Lt. Miller, testified at the suppression hearing that police units had been sent to Banks' home because police feared that the four men would "split up the money" and "go in four different directions." Finally, whether the pursuing police could have summoned officers from Loyalsock Township is not a controlling·issue. The statute's applicability is not controlled by necessity and is not defeated by the availability of other assistance, or by police knowledge of destination, or by any other factual distinction which can be argued after the fact. The statute speaks solely of pursuit: did the officer continue in pursuit of the perpetrator after commission of an offense? Was the pursuit fresh?

■ We conclude that a liberal, common sense interpretation of the statute requires that the arrest made by the Williamsport police be held legal. Their pursuit of four felons who committed a robbery within their jurisdiction was fresh (they began searching for Banks immediately upon hearing the broadcast of the robbery), continuous (the entire thirty minute period between notice of the crime and arrival at the Banks home was spent investigating the robbery and searching for the robbers), and uninterrupted (no other crimes were reported or calls were received to take those police units away from the investigation and pursuit of the robbers). Therefore, we hold that the arrest of appellants beyond the territorial limits of the City of Williamsport was legal, and the lower court's decision refusing to suppress evidence because of an illegal arrest was proper.

■ Appellants also contend, even if their arrest followed fresh pursuit, that the police nevertheless lacked probable cause to effect a warrantless arrest.[6] It is axiomatic that warrantless arrests must be based on probable cause. "The law is clear that a warrantless arrest is not lawful unless there is probable cause therefor.... Whether there is probable cause to arrest without a warrant depends on whether, at the moment a suspect is taken into custody, the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and that the person to be arrested has committed the offense....

"Thus, in order to arrest without a warrant, the officer must have a reasonable belief in the probability of criminal activity by the person to be arrested. However, that belief need not be grounded in the officer's direct, personal knowl-

---

**6.** Appellants argue that a technical arrest took place when the initial entry into the Banks home was made by four police officers. This was 5 to 10 minutes before Lt. Miller arrived and produced an inculpatory statement from Boyd Beatty. We agree with the lower court that a determination of the precise moment of arrest is unnecessary, because those first officers to reach the Banks residence already had probable cause to arrest.

edge of the relevant facts and circumstances. It may, instead, rest solely on information supplied by another person where there is a 'substantial basis' for crediting that information...." *Commonwealth v. Urbina,* 290 Pa.Superior Ct. 117, 120, 434 A.2d 157, 159 (1981), quoting *Commonwealth v. Stokes,* 480 Pa. 38, 43–44, 389 A.2d 74, 76 (1978).

■ In the instant case, the police unquestionably had probable cause to arrest Banks, for he had been identified by the victims as one of the robbers.[7] See: *Commonwealth v. Mamon,* 449 Pa. 249, 297 A.2d 471 (1972); *Commonwealth v. Kennedy,* 271 Pa.Superior Ct. 206, 412 A.2d 886 (1979); 5 Am.Jur.2d Arrest § 46. They also knew that the perpetrators of the robbery were four in number; and upon arrival at the Banks residence found it occupied by four men, including Banks who had been identified by name as one of the robbers. These facts were sufficient to warrant prudent men in believing that the four men were the same men who had committed the offense only one-half hour earlier. See generally: *Commonwealth v. Powers,* 484 Pa. 198, 398 A.2d 1013 (1979); *Commonwealth v. Vessells,* 273 Pa.Superior Ct. 100, 416 A.2d 1108 (1979); *Commonwealth v. Hartley,* 264 Pa.Superior Ct. 219, 399 A.2d 745 (1979); *Commonwealth v. Payton,* 253 Pa.Superior Ct. 422, 385 A.2d 410 (1978).

■ Appellant Brown raises two additional issues on appeal. The first issue is whether he intelligently and knowingly waived his *Miranda*[8] rights before making an inculpatory statement to the police. He contends that the statement was involuntary because he had consumed alcohol and ingested drugs during earlier hours on the same day. Although defense witnesses testified that Brown was staggering when police arrived, police witnesses testified that he exhibited no visible indicia of intoxication. The hearing judge, who also had the opportunity to listen to a tape

7. Banks' appellate brief also questions the warrantless entry of his home. This issue was not raised in post-trial motions; consequently, it has been waived and has not been preserved for appellate review.

8. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

recording made of Brown's statement, found that Brown was alert and able to waive his *Miranda* rights knowingly, intelligently, and voluntarily.

"The burden rests with the Commonwealth to show voluntariness of a confession by a preponderance of credible evidence . . . . Our duty on review is to determine whether the record supports the factual and legal findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we are to consider only the evidence of the Commonwealth's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Hunt*, 263 Pa.Superior Ct. 504, 509, 398 A.2d 690, 692 (1979), citing *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975). Having made an independent review of the record, we conclude that it supports the factual and legal findings of the suppression court. The court could reasonably choose to believe the Commonwealth's evidence regarding Brown's condition at the time the statement was made. *Commonwealth v. Moore*, 454 Pa. 337, 311 A.2d 620 (1972). Certainly, "there is no basis for us to hold as a matter of law that the court's finding of voluntariness of the confession was not adequately supported and well within the court's discretion." *Commonwealth v. Smith*, 447 Pa. 457, 461, 291 A.2d 103, 104 (1972); *Commonwealth v. Hunt*, supra.

The final issue raised by appellant Brown is that the court below erred in granting a Commonwealth motion to extend the time within which to commence trial under Rule 1100. The robbery had occurred on October 14, 1979, and the run date for Rule 1100 purposes was April 12, 1980. Suppression hearings were conducted through March 3, 1980, and a determination was made by order of March 18, 1980. The Commonwealth sought to consolidate the charges against Brown and two of the accomplices for trial purposes, but his request was denied. Following that decision, the next scheduled criminal trial session in Lycoming County was March 31 to April 11, 1980. In that period, two of Brown's

co-defendants were tried. Appellant's case was called for trial on April 10, when the Commonwealth appeared and was prepared to proceed to trial. Brown objected to being tried before jurors to be drawn from the same panel which had convicted a co-defendant. Because a new jury panel would not be drawn until the next scheduled trial session, Brown requested and the trial court granted a motion for continuance. The court directed the case to be listed immediately for the next term. The following day, April 11, 1980, the Commonwealth filed its motion to extend, and this was granted. Brown was tried on the first day of the next criminal, trial session. At that time, he waived his right to a jury trial and was tried non-jury.

Brown complains that the extension of time was improperly granted. We disagree. If it had not been for appellant's objection to the jury, trial would have commenced on April 10, prior to the expiration of 180 days. This objection by appellant could have been deemed a waiver. *Commonwealth v. Favors*, 273 Pa.Superior Ct. 109, 416 A.2d 1113 (1979). Nevertheless, the Commonwealth prudently requested an extension after Brown's motion for continuance had been granted. These circumstances evidenced due diligence by the Commonwealth and warranted the trial court in granting the requested extension. This court has determined that jury unavailability will be deemed judicial delay. *Commonwealth v. Davis*, 261 Pa.Superior Ct. 204, 395 A.2d 1388 (1978); *Commonwealth v. Metzger*, 249 Pa.Superior Ct. 107, 375 A.2d 781 (1977). For such delay, a Commonwealth petition to extend in order to provide a new jury panel is justified. *Commonwealth v. Corbin*, 268 Pa.Superior Ct. 526, 408 A.2d 1128 (1979).

Finding the arguments of Brown and Banks to be without merit, we affirm the judgments of sentence entered against them.

Judgments of sentence affirmed.