451 A.2d 520

**COMMONWEALTH of Pennsylvania**

v.

**Gary Darren STASIAK, Appellant.**

Superior Court of Pennsylvania.

Submitted March 17, 1981.

Filed Oct. 8, 1982.

258

Morton DeBroff, Pittsburgh, submitted a brief on behalf of appellant.

Albert Nichols, District Attorney, Greensburg, submitted a brief on behalf of Commonwealth, appellee.

Before CERCONE, P.J., and BROSKY, and MONTEMU-RO, JJ.

CERCONE, President Judge:

Appellant was convicted in a non-jury trial of burglary, receiving stolen property, conspiracy, and possession of controlled substances with intent to deliver. Appellant's omnibus pre-trial suppression motion was denied. Appellant's post-verdict motions were denied and the appeal followed. Appellant received a sentence of three to six years for the burglary, conspiracy, and receiving stolen property convictions, and a suspended sentence for the violation of the Controlled Substance Act conviction. This appeal followed. We affirm.[1]

Appellant raises three issues on appeal. First, whether the evidence was insufficient to support the convictions and whether the Commonwealth failed to prove the corpus delecti of any of the crimes with which the appellant was charged. Second, whether an extra-territorial arrest of appellant was unlawful. And third, whether the warrantless arrest of the appellant was made without probable cause.

On September 21, 1978, at about 1:45 a.m., the Thrift Drug Store on Route 22 in Murrysville, Westmoreland County, was burglarized. An alarm was activated which alerted the Murrysville Police. In addition, two guards at the Beckwith Machinery Company which is located across the road, heard a noise which came from the direction of the Thrift Drug Store. One guard telephoned the police and reported that he had seen two people running in the parking lot away from the Thrift Drug Store: he described one as wearing a red shirt, and the other as wearing dark clothing. He also indicated that less than a minute after he had observed the individuals running from the store a light green "General Motors" or "Buick" automobile came from

1. Appellant's two co-conspirators were also convicted. Their convictions were affirmed *per curiam*. See *Commonwealth v. Strickler,* 293 Pa.Superior Ct. 605, 435 A.2d 646 (1981).

the direction in which the two had been running and headed west on Route 22. He did not state that he had seen the vehicle leave the drug store parking lot. A call went out on the police radio immediately after the guard reported the incident.

Officer Andrew Patrick received the call about the burglary while he was east of the Thrift Drug Store, but travelling in a west bound direction on Route 22. He proceeded westbound on Route 22 and passed by the Thrift Drug Store within a minute. At the Westmoreland-Allegheny County line he saw a vehicle in front of him also heading westbound which was already in Allegheny County. It was the only vehicle on the road.

As Officer Patrick caught up with the car, he observed that it was a light gray 1971 Buick with a black vinyl top. He stopped the car at a site approximately one mile past the county line and approximately two and one half miles from the drug store. He observed three men in the car. The front seat passenger was wearing a red shirt, and the passenger in the rear, appellant, was wearing black. Between the sounding of the burglar alarm and the stopping of the car less than four minutes had elapsed. When Officer Patrick approached the car and shined his flashlight inside he observed several bottles only partially concealed under the front seat. Some of the bottles were marked as having come from the Thrift Drug Store. The appellants were then arrested.

In testing the legal sufficiency of the evidence to support the verdict, the reviewing court is not permitted to substitute its judgment for that of the fact finder. The reviewing court is restricted to assessing the evidence in the light most favorable to the verdict winner, here the Commonwealth, and drawing all proper inferences that the evidence suggests in that party's favor. *Commonwealth v. Smith,* 490 Pa. 374, 378, 416 A.2d 517, 519 (1980). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Harper,*

485 Pa. 572, 576, 403 A.2d 536, 538 (1979).[2] We hold that the evidence was sufficient to support all the convictions.

Under the Crimes Code of Pennsylvania, a person is guilty of burglary if he enters a building or occupied structure with the intent to commit a crime therein, unless the premises are at the time open to the public or the person who enters is licensed or privileged to do so. 18 Pa.C.S. § 3502(a). In order to prevail at trial, the Commonwealth must prove beyond a reasonable doubt the following three elements: (1) entry of a building or occupied structure by the defendant; (2) with the contemporaneous intent on the part of the defendant of committing a crime therein; (3) at a time when the premises were not open to the public and the defendant was not then licensed or privileged to enter. *Commonwealth v. Tingle*, 275 Pa.Superior Ct. 489, 419 A.2d 6, 9 (1980). "[T]he specific intent to commit a crime necessary to establish the second element of burglary may . . . be found in the Defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therein. . . . A fact finder may conclude beyond a reasonable doubt that when one enters a building by force, he did so with the intent to commit a crime therein." *Id.* The broken front door, the flight from the store by a man wearing dark clothing, the possession of bottles of drugs

**2.** It is unnecessary to address separately the issue of whether or not the Commonwealth failed to prove the corpus delecti of any of the crimes with which the appellant was charged because this question is resolved by discussing whether or not the evidence was sufficient to support the convictions. By definition, the corpus delecti of a crime is subsumed within the elements of a crime:

> In establishing a criminal case, it is incumbent upon the Commonwealth to show: (1) that a loss has occurred, (2) that the loss occurred through a criminal agency, and (3) that the accused was, in fact, the perpetrator of the deed. The corpus delecti of a crime consists of the first two factors or elements.

*Commonwealth v. Herman,* 288 Pa.Superior Ct. 219, 230, 431 A.2d 1016, 1022 (1981).

The only instance in which a separate discussion of the corpus delecti is relevant is when an appellant's confession is introduced into evidence. The corpus delecti must be proven prior to and independent of the appellant's confession. *Commonwealth v. Herman,* supra, 288 Pa.Superior Ct. at 231, 431 A.2d at 1022. This situation does not present itself here.

identified as being from the store, and the apprehension four minutes later of the appellant who was dressed in black were sufficient to establish the intent to commit a crime at the time of entry. Appellant argues further that there was insufficient evidence to convict him of this particular burglary, as opposed to a burglary at the same store which occurred only a few days earlier. This argument is without merit. The apprehension of the appellant within four minutes after the alarm was triggered, with the stolen bottles, allowed the factfinder to conclude beyond a reasonable doubt that the appellant was involved in the second burglary.

The essence of a criminal conspiracy is a common understanding, between two or more persons, to do an unlawful act. *Commonwealth v. Madison,* 271 Pa.Superior Ct. 382, 387, 413 A.2d 718, 720 (1979). *See also* 18 Pa.C.S. § 903. A conviction can be sustained without direct or explicit proof of the agreement. The conduct of the parties and the totality of the circumstances surrounding their activities can support an inference that a conspiracy existed. *Id.* The evidence in the instant case supports an inference that a conspiracy existed.

The elements of the crime of receiving stolen property are set out in 18 Pa.C.S.A. § 3925. This section provides:

(a) Offense defined.—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

(b) Definition.—As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

To sustain a conviction of receiving stolen property, evidence must establish that defendant "intentionally received" the property which includes possession or control, and that defendant "knew" that the property had been stolen. *Com-*

*monwealth v. Scudder,* 490 Pa. 415, 416 A.2d 1003 (1980). Appellant contends that the evidence does not establish that he either had possession or control over the drugs or that he knew that they came from the September 21st burglary. As with the controlled substances conviction, appellant's possession could have been constructive or joint. Appellant also contends that the evidence is insufficient to prove the charge of receiving stolen property because the drugs cannot be connected particularly with the September 21st burglary. The almost immediate apprehension of the appellant and possession of drugs taken from the drug store supports the inference that the drugs were taken in the September 21st burglary.

■ Appellant's final conviction was for possession of controlled substances with intent to deliver. The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a)(30) provides as follows:

The following acts and the causing thereof within the Commonwealth are hereby [illegal]:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance."

In the instant case the Commonwealth must prove three elements—possession of and intent to deliver a controlled substance. This court in *Commonwealth v. Thompson,* 286 Pa.Superior Ct. 31, 428 A.2d 223 (1981), comprehensively outlined the elements required to prove possession:

The Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband. Proof of constructive or joint constructive possession of dangerous drugs requires evidence that the defendant, or in joint constructive possession cases, the defendant and others had both power to control and the intent to exercise control over the narcotics. A necessary

prerequisite of intent to control is proof that he had knowledge of the existence and location of the narcotics. . . . Persuasive evidence of constructive possession, the requisite knowledge and intent may be inferred from examination of the totality of the circumstances surrounding the case.

*Id.*, 286 Pa.Superior Ct. 34, 428 A.2d at 224.

 Constructive possession may be inferred in the instant case by the totality of the circumstances, including in particular the following circumstances: a man in clothing similar to appellant's was seen running from the site of the burglary, the drugs were located *under* the front seat, appellant was seated in the rear of the car, and the apprehension of appellant and the recovery of drugs occurred within four minutes after the break-in. As in *Commonwealth v. Kishbach,* 247 Pa.Superior Ct. 557, 373 A.2d 118 (1976), possession of a large quantity of drugs supports an inference that they were possessed with intent to deliver.

 The third element of the crime of possession with intent to deliver which the Commonwealth must prove is that the substance which the appellant possessed were controlled substances. Appellant contends that the Commonwealth may only prove that an item is a controlled substance by having experts testify as to the chemical composition of the items. He contends that the Commonwealth failed to prove that the items were controlled substances because the Commonwealth did not offer expert testimony of this nature. This contention is contradicted by the holdings in two cases. In the recent case of *Commonwealth v. Williams,* 285 Pa.Superior Ct. 515, 428 A.2d 165 (1981), the appellant was charged with corrupting a minor "by exposing the victim to the use of narcotic drugs." This Court held that "the existence of narcotic drugs does not have to be proven by chemical analysis and may be proven either by direct or circumstantial evidence." Id. 285 Pa.Superior Ct. at 521, 428 A.2d at 167. Similarly, in *Commonwealth v. Leskovic,* 227 Pa.Superior Ct. 565, 307 A.2d 357 (1973), appellants had been convicted of dispensing dangerous drugs. This Court held

that the conviction could be sustained without chemical analysis based on circumstantial evidence. In *Leskovic,* testimony by witnesses stating that appellants had sold them capsules called "Christmas trees," evidence that the description by a witness matched the description of a partic- ular barbituate and chemical analysis of a witness's blood which revealed a quantity of barbituate in his blood stream was enough. In the instant case, labels on many of the bottles, some of which were unopened, identified the drugs contained therein as being controlled substances. Because these labelled bottles were unopened, and because only four minutes had elapsed between the burglary and apprehen- sion, the fact-finder could reasonably infer that these bottles still contained the drugs which were indicated on the labels. Therefore, there was sufficient evidence to support the conviction for possession of controlled substances with intent to deliver.

The second issue which appellant raises on appeal is whether his extra-territorial arrest was unlawful. The sup- pression court held that the police made a lawful extra-terri- torial arrest while in hot pursuit and denied the motion to suppress evidence which was obtained pursuant to that arrest. In reviewing a ruling made at the suppression hearing to denying appellant's motion to suppress, the appel- late court's task is:

> ... to determine whether the factual findings are sup- ported by the record. In making this determination we are to consider only the evidence of the prosecution's witnesses and so much evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings we are bound by such findings; we may only reverse if the legal conclusions drawn therefrom are in error..."

*Commonwealth v. Patterson,* 488 Pa. 227, 233, 412 A.2d 481, 484 (1980). The suppression court found that Officer Pat- rick was in hot pursuit of a felon or felons at the time he made the arrest in Allegheny County. The appellant con-

tends that there is no factual support for this finding because the car in which appellant was travelling was not immediately visible to Officer Patrick.

The applicable statute is 42 Pa.C.S. § 8901 which provides as follows:

Any police officer of any political subdivision may arrest with or without warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after commission of the offense. The police officer shall exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision.

The issue in this case centers around the meaning of "pursuit" under 42 Pa.C.S. § 8901. The specific question to be answered is whether Officer Patrick was in "continuous pursuit" of appellant where the officer did not actually chase the appellant over the jurisdictional border but where he instead spied the fleeing vehicle after it had already crossed the county line.

The question of continuous pursuit has only been raised in two prior cases: *Commonwealth v. Brown*, 298 Pa.Superior Ct. 11, 444 A.2d 149 (1982); *United States v. Getz*, 381 F.Supp. 43 (E.D.Pa.1974). As Judge Wieand noted in *Commonwealth v. Brown*, supra, 298 Pa.Superior Ct. at 16, 444 A.2d at 152, "[t]here have not been a great number of cases dealing with pursuit in this Commonwealth. In most of the cases which have talked about 'pursuit', the officer has witnessed the violation and given chase." *See, e.g., Commonwealth v. Holderman*, 284 Pa.Superior Ct. 161, 425 A.2d 752 (1981); *Commonwealth v. Robb*, 238 Pa.Superior Ct. 62, 352 A.2d 515 (1975).[3]

**3.** The facts of *Commonwealth v. Silvers*, 286 Pa.Superior Ct. 161, 428 A.2d 622 (1981), are similar to those of the instant case although not strictly on point. As in the instant case, the police officer in *Silvers* did not see the violation, but he instead saw a vehicle matching a description which was given over the radio. The opinion in *Silvers*, however, did not specify whether the appellant was within or with-

The facts in the instant case closely resemble the facts in *Commonwealth v. Brown,* supra, and *United States v. Getz,* supra. In *Brown,* police responded to the report of a robbery. The victims identified one of the perpetrators by name. Police searched the neighborhood but were unable to find the robbers or identify the direction in which they fled. The police then proceeded to the residence of one of those identified as one of the assailants which was located less than a mile from the scene of the crime but outside the city limits. The suspect was apprehended at his home within thirty minutes after the police were initially notified of the crime. In *Getz,* after the police received notice of a felony and the location of the getaway car, they proceeded to the location, and not finding the felons there proceeded to another possible escape route. The officers then received a radio report that the getaway car had been sighted in another jurisdiction. They went to the latter location and arrested the appellant. Only 35 minutes elapsed between the initial radio report and the arrest. In both of those cases the convictions were sustained despite a challenge to the validity of the extra-territorial arrests.

The arrests in both cases were found to have been made in "pursuit" as it relates to 42 Pa.C.S. § 8901. The Court in *Getz* strongly refuted the appellant's contention that "pursuit" requires a chase:

> Defendants argue that the arrest was invalid because the officers were not in 'hot pursuit.' Apparently, defendants contemplate that only a fender-smashing Hollywood style chase scene would satisfy the requirement of the statute. We do not read the act so restrictively. The statute on it face provides only that the arrest may be effected beyond the territorial limit of the officers' jurisdiction so long as 'such officer continues in *pursuit* of the offender...' It

out the officer's jurisdiction at the time the officer first saw him. Therefore, we cannot rely on *Silvers* for an answer to the question in the instant case, which is whether the officer must have visual contact of the suspect and begin the chase while the suspect is still inside the officer's jurisdiction or whether the "chase" may begin in the arresting officer's jurisdiction where the suspect is first sighted across the border.

does not specify that the officer must be in 'hot' pursuit. The phrase 'continues in pursuit' supports the conclusion that the statute contemplates 'fresh pursuit.' In the instant case [the officers] were in continuous pursuit of the evasive robbers from the time of the initial communication . . . until the arrest. . . . . , a period of time encompassing 35 minutes. The officers proceeded diligently in their search for the fleeing robbers and there was no hiatus or interruption in their efforts. Accordingly, we conclude that the arrest was made . . . while the officers were in pursuit of the felons within the purview of 19 P.S. § 11.

*United States v. Getz,* supra at 46.

This Court in *Brown,* supra, 298 Pa.Superior Ct. at 17, 444 A.2d at 152, found the interpretation of the *Getz* court persuasive, and held that 42 Pa.C.S. § 8901 contemplated "fresh pursuit." This Court held that the extra-territorial arrest was legal where it was "fresh . . ., continuous . . ., and uninterrupted." *Id.* 298 Pa.Superior Ct. at 19, 444 A.2d at 153. Thus, the holding in *Brown* that a 30 minute search which culminated in an extraterritorial arrest satisfied the "continuous pursuit" requirement of 42 Pa.C.S. § 8901 is dispositive of the question. There was no error in denying the motion to suppress the evidence as the fruits of an illegal arrest.

Lastly, since Officer Patrick was in pursuit of appellant and his companions at the time he spotted them and gave chase it can hardly be said that he did not have reason to stop and question them. Even before he arrested or stopped them, the Officer had probable cause to suspect their involvement in the burglary based on the make of the car, its direction and speed, the loneliness of the car on the road and its multiple number of passengers. Of course, when he saw that the individuals matched the description of those he sought and that there were drug containers partially secreted beneath the seat what was already ample cause for suspicion was only made the greater. Since he was properly in a position to make an arrest and there was

probable cause to do so appellant's contention of error must fail.

Affirmed.