**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Michael J. McPEAK, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 20, 1997.
Filed Feb. 17, 1998.

John Enright, Philadelphia, for appellant.

Peter J. Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This is an appeal of the judgment of sentence entered against appellant for driving under the influence of alcohol in violation of 75 Pa.C.S. § 3731. We affirm.

The trial court summarizes the facts of the case as follows:

> On St. Patrick's Day, March 17, 1995, at approximately 8:30 in the evening, James O'Connell was in his house at the corner of Tabor and Martin's Mill Roads in the City and County of Philadelphia, watching television in his front room, when he heard a loud bang outside the house. He went to his window and although it was night time, the street lighting enabled him to see a gold-colored Plymouth Acclaim next to a legally parked car. The street side of the parked car had been smashed. O'Connell concluded from the noise and position of the vehicles that the Acclaim had hit the parked car. The Acclaim was operated by [appellant], Michael McPeak. O'Connell watched McPeak continue on Martin's Mill Road and hit another parked car, a Ford Taurus, approximately 20 car lengths form the first. O'Connell ran out of his house, got into his own car, and followed [appellant's] Acclaim. [Appellant] continued to drive in an erratic fashion until he pulled up to his house at 8 Central Avenue in Cheltenham Township. [Appellant's] house is located approximately 25 yards into Cheltenham Township, Montgomery County.
>
> A second civilian witness, James McQuaide, was also in the vicinity at the time and observed the same erratic driving on the part of [appellant] McPeak. Mr. McQuaide also decided to follow the swerving car, and obtained the license number. He too followed McPeak, and along with O'Connell reported the information to the Philadelphia Police.
>
> Officer Schwartz of the Philadelphia Second Police District received the information that a car bearing license plates registered to McPeak was at the Central Avenue address and had hit two parked cars at approximately 6422 Martin's Mill Road in the city and county of Philadelphia. He also received information that the driver appeared intoxicated, left the scene of an accident, and was followed to 8 Central Avenue. He proceeded to 8 Central Avenue in Cheltenham Township in Montgomery County where he met his supervisor Lieutenant Duran. When he arrived at the location, Schwartz observed the Plymouth Acclaim outside the house. He examined the Acclaim and found that the car had sustained heavy damage and the hood and hub caps were still hot from recent use. Lieutenant Duran and [appellant] were outside the house. [Appellant] was unable to stand without assistance, and was unable to produce ·identification because he kept falling as he attempted to reach for his wallet. His clothing was disarrayed, his breath smelled of alcohol, and his eyes were bloodshot. [Appellant] was informed he had been identified by civilians as the driver of a vehicle that had fled the scene of an accident, was given his warnings, and was placed under arrest for driving under the influence.

Trial court opinion, at 2–4 (footnote omitted).

Following a suppression hearing, appellant's motion for suppression of all evidence of his intoxication was denied. At the Municipal Court trial, the court found appellant guilty of driving under the influence of alcohol. Appellant appealed for a trial *de novo* in Common Pleas Court wherein he was again found guilty of the same offense. Appellant was sentenced to 48 hours incarceration, 2 years non-reporting probation, completion of Alcohol Highway Safety School and Alcohol Abuse Program, 1 year suspension of

his driver's license, and $300 in fines and $182 in court costs. Appellant filed post-sentence motions, which were denied. This appeal followed.

■ Appellant's sole question on appeal is whether the trial court erred in failing to suppress all evidence of his intoxication because the Philadelphia Police officers violated the Municipal Police Jurisdiction Act (MPJA) by arresting appellant in Cheltenham Township. In reviewing the appeal of appellant's judgment of sentence, we are in essence reviewing the denial of appellant's suppression motion.

> In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–79 (1992). We are bound by the suppression court's findings of fact and we may reverse only if the suppression court's legal conclusions were erroneous. *Commonwealth v. Williams,* 547 Pa. 577, 692 A.2d 1031 (1997).

■ Denying appellant's post-sentence motions, the lower court found that suppression was properly denied because the police officers' actions were authorized under MPJA exceptions contained in 42 Pa.C.S.

§ 8953(a)(2) and (a)(5).[1] Section 8953(a)(2) provides that an officer may enforce the laws of this Commonwealth beyond the territorial limits of his primary jurisdiction

> [w]here the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

Therefore, in order for appellant's arrest to have been valid under the MPJA, the offense needed to have been committed in, or the officers needed to have probable cause to believe the offense was committed in, the officers' primary jurisdiction. Furthermore, the officers needed to be in hot and fresh pursuit of the suspect. Because the offense was clearly committed in the officers' primary jurisdiction of Philadelphia, the officers needed only to be in hot and fresh pursuit for this exception to apply.[2]

What constitutes hot and fresh pursuit, however, has not been conclusively settled in previous case law. In *Stasiak* and *Brown,* the Superior Court reviewed cases brought under the Intrastate Hot Pursuit Act, the precursor to the MJPA, which required police to "continue in pursuit." *Commonwealth v. Stasiak,* 305 Pa.Super. 257, 451 A.2d 520 (1982); *Commonwealth v. Brown,* 298 Pa.Super. 11, 444 A.2d 149 (1982). Those cases adopted the federal district court holding in *United States v. Getz,* 381 F.Supp. 43 (E.D.Pa.1974), that the phrase "continue in pursuit" required fresh, continuous, an uninterrupted pursuit. In *Stasiak,* however, the Court seemed to distinguish hot pursuit from fresh pursuit, indicating that the former required some sort of a chase. *See Stasiak, supra.* In *Magwood,* our Supreme Court

---

1. 42 Pa.C.S. § 8953(a)(5) permits extra-territorial arrests where "the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer ..."

As we affirm on the basis of § 8953(a)(2), we need not address the applicability of § 8953(a)(5). We will also not address the remaining exceptions to the MPJA found at 42

Pa.C.S. § 8953(a)(1), (a)(3), (a)(4), and (a)(6), as they are inapplicable to this case.

2. In his brief, appellant argues that the exception does not apply because the police did not have probable cause to believe that an offense had been committed within their primary jurisdiction. The police clearly had such probable cause from the two smashed vehicles and witness statements that the suspect crashed into the cars and fled the scene.

adopted the *Getz* standard as applied in *Brown* and *Stasiak* to cases brought under the Intrastate Hot Pursuit Act. *Commonwealth v. Magwood*, 503 Pa. 169, 469 A.2d 115 (1983).

■ In 1982, the Intrastate Hot Pursuit Act was repealed and replaced by the MPJA. This Court has not specifically defined the hot and fresh pursuit requirement under the MPJA. Despite the difference in language in the statutes, these cases have not differentiated the pursuit requirement under the MPJA and that under its precursor. *See, e.g., Commonwealth v. Reddix*, 355 Pa.Super. 514, 513 A.2d 1041, 1044 (1986) ("officers were in 'hot' or 'fresh' pursuit of the suspects"); *Commonwealth v. McGrady*, 454 Pa.Super. 444, 685 A.2d 1008, 1011 (1996) ("continues in fresh pursuit"); *Commonwealth v. Fetsick*, 392 Pa.Super. 264, 572 A.2d 793 (1990) ("continues in pursuit"). In these cases, this Court did not set forth the requirements necessary to establish hot and fresh pursuit. We therefore must clarify that the hot and fresh pursuit requirement for this MPJA exception necessitates a finding that the officers met the immediate, continuous, and uninterrupted standard previously applicable to the Intrastate Hot Pursuit Act as well as the additional requirement of some sort of chase.

■ We note that hot pursuit does not require a "fender-smashing Hollywood style chase scene." *Stasiak, supra* (quoting *Getz, supra* at 46). Hot pursuit simply requires a chase. Appellant appears to suggest that the required chase must be one in which an officer observed a crime and instantaneously pursued the suspect. If that were truly the requirement intended by the legislature, then language to that effect would be in the statute. Instead, the legislature used the phrase "hot pursuit." Hot pursuit by its terms does not require police observation of the criminal activity nor does it negate pursuits based on witness information as to the location of the suspect. *See Reddix, supra* (holding that hot pursuit applied when victims at the crime scene gave a description of the suspect's vehicle and its direction which was broadcast over the police radio and police observing a car meeting that description followed and

stopped the car). In the instant case, concerned citizens instantaneously followed appellant in their own vehicles and gave police information to identify appellant's vehicle and the location where appellant fled. On this information, following only a very short interval after the accidents, the police sought appellant. Although the instant chase may not make the evening news, it still satisfies the requirements of the MPJA.

In the instant case, the suppression court specifically found that "Officer Schwartz was in 'hot' and 'fresh' pursuit of [appellant] at all times." Trial court opinion, at 6. The suppression court therefore applied a standard that fresh pursuit on its own was not enough to enable these officers to arrest outside of their primary jurisdiction and that hot pursuit, separate and apart from the definition of fresh pursuit, was needed. Therefore, the suppression court applied the correct legal standard.

Additionally, the suppression court determined from the evidence before it that the hot and fresh pursuit standard was met. The extra-territorial encounter occurred within minutes of the criminal accidents, concerned citizens immediately followed appellant and told the police where to find him, and when the police arrived, the hood and hub caps of appellant's car were still hot and appellant's level of intoxication was undiminished. This evidence clearly supports the finding by the suppression court that the officers' pursuit was immediate, continuous, and uninterrupted, as well as constituting a chase. Therefore, the suppression court did not err in concluding that the officers' actions met the hot and fresh pursuit requirements.

Because the suppression court employed the required standard of hot and fresh pursuit and there was evidence sufficient to make a finding that the police were actually in such pursuit, we find no error by the suppression court in order to reverse the judgment of sentence.

■ Furthermore, even if, as appellant claims, the police had not been in hot and fresh pursuit, there is no legal basis to suppress the evidence seized as a result of the police officers' actions in this case. In *Com-*

monwealth v. Merchant, 385 Pa.Super. 264, 560 A.2d 795 (1989),[3] this Court noted that there was some authority that suppression was an appropriate remedy for violation of the MPJA and some authority that suppression was an inappropriate remedy for a MPJA violation. We support the pronouncement of the *Merchant* Court that not "all violations of the Act will be free from the remedy of suppression." *Id.* 560 A.2d at 797. But, the *Merchant* Court found that the MPJA was meant to allow for "extra-territorial activity in response to specifically identified criminal behavior, that occurring within the primary jurisdiction of the police." *Id.* at 799. Such is the situation in the instant case where the police officers pursued appellant in response to a specific crime that occurred in their primary jurisdiction. In such cases, the *Merchant* Court found that if there were technical violations of the MPJA there should not be suppression. *Id.*[4] The subjective question of whether the officers' actions constituted hot and fresh pursuit, standing in the way of a valid arrest, seems to epitomize what the *Merchant* Court meant by a technical violation of the MPJA. We remind appellant that

> [a]utomatic exclusion of evidence by searches accompanied by relatively minor infractions of the rules of criminal procedure would be a remedy out of all proportion to the violation, or to the benefits gained to the end of obtaining justice while preserving individual remedies.

**3.** In *Commonwealth v. Merchant*, 528 Pa. 161, 595 A.2d 1135 (1911), the Supreme Court vacated the Superior Court's order, finding that the stop and detention involved in the case was statutorily authorized.

**4.** We do note that the *Merchant* Court properly found that *suppression is quite appropriate in cases where the police conduct is in direct conflict with the MPJA*, such as extra-territorial patrols. *Id.*

**1.** Act of June 15, 1982, P.L. 512, No. 141, as amended.

**2.** In its appellate brief, the Commonwealth suggests that the officers were authorized to arrest appellant since Cheltenham Township and the City of Philadelphia had an agreement permitting Philadelphia Police Officers to patrol the Cheltenham Township area. In *Commonwealth*

*Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023, 1030 (1989). Therefore, even if the police were not in hot and fresh pursuit, their behavior was action contemplated by the MPJA and would only constitute a technical violation of the statute. Thus, suppression of the evidence would be inappropriate in the instant case.

Judgment of sentence affirmed.

POPOVICH, J., dissents.

POPOVICH, Judge, dissenting.

I respectfully dissent from the opinion of the majority since I am convinced that the Philadelphia Police Officers were not authorized to arrest appellant in Cheltenham Township pursuant to the Statewide Municipal Police Jurisdiction Act (MPJA).[1] Accordingly, I would find that the trial court erred in denying appellant's motion to suppress the evidence seized as a result of the officers' unauthorized actions.

The issue on appeal is whether the officers had the authority to arrest appellant in Cheltenham Township. It is clear that Cheltenham Township was outside the officers' primary jurisdiction.[2] However, the trial court determined that the officers were permitted to act beyond their territorial limits pursuant to 42 Pa.C.S.A. § 8953(a)(2) and (a)(5) of the MPJA. I disagree.

Section 8953(a)(2) provides the following:

(a) General rule.—Any duly employed municipal police officer who is within this

v. *Lloyd*, 701 A.2d 588, 589–590 (Pa.Super.1997), we held that "boroughs are permitted to enter into contracts with nearby or adjacent boroughs, either for mutual aid or assistance in police protection.... The legal effect [of such a contract] is to empower the police of one municipality to arrest someone in the other municipality." However, in order for boroughs to contract for police services properly, "there are certain formalities which must be observed before a particular police officer has the authority to act inside the neighboring municipality." *Id.* at 590. Specifically, the police officer must be appointed individually in the contract accepting the neighboring police officers. *Lloyd, supra.* Here, there was no evidence presented indicating that Officer Schwartz or Lieutenant Durran was appointed individually or that a formal, written contract even existed.

Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

.　　.　　.　　.　　.

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S.A. § 8953(a)(2). By its terms, this Section confers extraterritorial authority only when (1) an offense was committed or the officer had probable cause to believe that an offense was committed in his primary jurisdiction; (2) the officer is in hot pursuit of the suspect; and (3) the officer continues in fresh pursuit of the suspect after commission of the offense.

Here, it is clear that the offense in this case occurred within Philadelphia, the officers' primary jurisdiction. It is also clear that the key to resolution of this case is the definitions of "hot pursuit" and "fresh pursuit" as those terms are used in the MPJA. There have not been a great number of cases dealing with "pursuit" under Section 8953(a)(2) in this Commonwealth. In most of the cases which have applied the statute, the officer witnessed the violation and then immediately chased the defendant. *See Commonwealth v. McGrady*, 454 Pa.Super. 444, 685 A.2d 1008 (1996); *Commonwealth v. Donton*, 439 Pa.Super. 406, 654 A.2d 580 (1995). However, we have discussed the term "pursuit" as it related to 42 Pa.C.S. § 8901, the Intrastate Hot Pursuit Act, in circumstances similar to those in the case *sub judice.*[3]

In *Commonwealth v. Brown*, 298 Pa.Super. 11, 444 A.2d 149 (1982), the defendant robbed two elderly victims at their home in Williamsport, Pennsylvania. After the rob-

bery, the victims immediately contacted the Williamsport police. Upon arrival, the police learned that the victims recognized the suspect and that the suspect's name was Jerry Banks. Two police units proceeded to Banks' home, which was located outside the city limits, and arrested him. We found that, pursuant to the Intrastate Hot Pursuit Act, the extraterritorial arrest was authorized. Specifically, we found that the officers' pursuit of the defendant was fresh, continuous and uninterrupted. *Brown*, 444 A.2d at 153.

Clearly, under *Brown's* interpretation of the Intrastate Hot Pursuit Act, the officers' action in this case was authorized. Here, like in *Brown*, the officers' pursuit was fresh in that they immediately traveled to appellant's home, it was continuous in that from the moment notice of the crime was received the officers pursued appellant, and it was uninterrupted in that no other crimes were being handled while the officers were searching for appellant. Simply put, under *Brown*, the officers were in "fresh pursuit" of appellant prior to arresting him.

However, the Intrastate Hot Pursuit Act was repealed in 1982 and was replaced by 42 Pa.C.S.A. § 8953(a)(2) of the MPJA. A close reading of the MPJA and the Intrastate Hot Pursuit Act reveals that the text of the MPJA requires officers to be in "fresh and hot pursuit," while the text of the Intrastate Hot Pursuit Act requires only that officers be in "fresh pursuit." This court and our supreme court have both acknowledged that there is a difference between the phrases "fresh pursuit" and "hot pursuit." In *Commonwealth v. Magwood*, 503 Pa. 169, 469 A.2d 115 (1983), *Commonwealth v. Stasiak*, 305 Pa.Super. 257, 451 A.2d 520 (1982), and *Brown, supra*, the appellate courts held that the Intrastate Hot Pursuit Act did not require "hot pursuit." Rather, the Act merely required the officer to be in "fresh pursuit." The courts then attempted to distinguish between the two phrases, concluding that "hot pursuit" requires some sort of chase, whereas "fresh pursuit" does not require a chase. *Stasiak, supra.*

---

**3.** In interpreting a statute, we should consider "[t]he former law, if any, including other statutes upon the same or similar subjects." 42 Pa.C.S. § 1921(c)(5).

Giving effect to every word of Section 8953(a)(2), and giving the phrase "hot pursuit" its plain and ordinary meaning, I conclude that, as a matter of law, "hot pursuit" requires some sort of chase. *See* 1 Pa.C.S.A. § 1921(a). While it is not necessary for the chase to be a "fender-smashing Hollywood style chase scene," it is necessary, at the very least, for the officer to chase the suspect and not just appear at the suspect's home after receiving information regarding the suspect's location. 68 Am.Jur.2d, Searches and Seizures 708.

Here, the Philadelphia Police Officers did not chase appellant. The facts reveal that by the time the first officer arrived on the scene, appellant had already returned to his house. The police then investigated the matter by confirming appellant's license plate number and address. It was at this point that the police proceeded to appellant's home and arrested him. I am convinced that, under these facts, there was no "hot pursuit" of appellant by the officers. Accordingly, I would find that the trial court erred in denying appellant's motion to suppress under Section 8953(a)(2). Accordingly, I would reverse the lower court's suppression order and find that the evidence seized as a result of the officers' unauthorized actions should be suppressed. *Commonwealth v. Fischer*, 348 Pa.Super. 418, 502 A.2d 613 (1985) (where MPJA did not authorize the police to arrest appellant, the evidence must be suppressed).