469 A.2d 115

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kendall MAGWOOD, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 14, 1983.

Decided Dec. 13, 1983.

John H. Corbett, Jr., Public Defender, Paulette D. Balogh, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Dara A. DeCourcy, Asst. Dist. Atty., Kemal Alexander Mericli, Pittsburgh, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-
TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

This is an appeal by allowance from Superior Court's
order affirming Allegheny County Common Pleas' judg-
ment of sentence against appellant for robbery after a jury
found him guilty of that crime. The issue before us is
whether appellant's arrest, carried out by a McKees Rocks
police officer in the City of Pittsburgh, was proper under 42
Pa.C.S. § 8901,[1] authorizing local police to arrest individuals
beyond the territorial limits of their jurisdiction "if the
officer continues in pursuit of such person after commission
of the offense." We agree with the lower courts that the
police were here in pursuit of appellant within the meaning
of the applicable statute. Furthermore, the facts show the
arresting officer had probable cause. Since the extraterri-
torial arrest was lawful, we affirm Superior Court.

An analysis of the term "pursuit" is necessary to this
holding. Appellant argues that his arrest was improper
because the arresting officer was not in "hot pursuit,"
which he maintains the statute requires. He also argues
that the proper standard for police entry into a foreign
jurisdiction is a belief based on probable cause that the
suspect has entered that jurisdiction. The Commonwealth
contends that the term "pursuit" as used in Section 8901
has consistently been interpreted to mean "fresh" or "con-
tinuous," rather than "hot" pursuit, and that under that
standard the arrest in the present case was proper. It
further argues that "reasonable belief", rather than "proba-
ble cause", is all the statute requires for local police to
arrest in another jurisdiction. In the alternative it contends
probable cause existed in this case.

---

**1.** Section 8901 was repealed after appellant's arrest. Act of June 15,
1982, P.L. 512, No. 141, § 3, effective in 60 days. It was replaced in
the same Act by 42 Pa.C.S. § 8953.

On August 23, 1980, Daniel Irvin was the only clerk operating a 24-hour Mini Mart on Chartiers Avenue in McKees Rocks, Allegheny County. At approximately 6:35 a.m., appellant, holding a sock over his face with his left hand, entered the store, pointed a silver toy gun at Irvin, and demanded the money from the cash register. Although he assumed the gun was authentic, Irvin reached for it. Appellant pulled away and left the store, dropping the sock from his face when he was outside, thus allowing Irvin a clear view of his face for a few seconds at a distance of about 12 feet. Irvin gave chase, but was unable to catch appellant. Irvin returned to the store and reported the attempted robbery to McKees Rocks Police. He also gave them a description of the suspect including his clothing and approximate height and weight. Officer Logue of the McKees Rocks Police arrived about 1 minute later and received from Irvin the route of appellant's flight. Meanwhile, Officer Connors of the same police force drove to Thompson Avenue in the area where appellant had last been seen. A pedestrian informed him that he had seen a man fitting appellant's description running down Thompson Avenue toward the Wind Gap Bridge which leads into the City of Pittsburgh. Five other patrol cars, from McKees Rocks, Stowe Township and Kennedy Township, also pursued the suspect.

Armed with the information from Irvin and Officer Connors, and remaining in constant contact with the other police units, Officer Logue left the Mini Mart in pursuit of appellant. The officers knew that the only three street routes available to appellant were Church Avenue, Chartiers Avenue and Thompson Avenue. The last led over the Wind Gap Bridge. Because all other escape routes were covered and appellant had not yet been seen, Officer Logue suspected that appellant had taken a footbridge under the Wind Gap vehicular bridge into Pittsburgh. Acting on the thought he drove over the Wind Gap Bridge into the city. After crossing, while still looking for the suspect, he circled

back. Before he got back to the bridge itself he spotted a person whose description matched that of the robber. This person, also wearing clothes like those of the robber, was about 45 yards away when first seen. Apparently, on seeing Logue the person ran away. That Officer gave chase on foot and apprehended appellant on residential property in the City of Pittsburgh. Officer Logue then arrested appellant and seized the toy gun used in the attempted robbery, a sock in appellant's left pocket, and a white and black print shirt.[2] Thirty-five minutes had passed since the attempted robbery. Approximately five minutes after the arrest, Irvin, the store clerk, positively identified appellant as the man who attempted to rob him.

Appellant was charged with robbery, criminal attempt and resisting arrest. He was found guilty of robbery, but not guilty of either criminal attempt or resisting arrest. The trial court denied post-trial motions for a new trial or in arrest of judgment. Superior Court affirmed *per curiam*. 305 Pa. Superior Ct. 647, 452 A.2d 31 (1982).

While this Court has never dealt with the applicable version of our pursuit statute, we have interpreted its predecessor, 19 P.S. § 11,[3] but in cases which did not directly deal with interpretation of the term "pursuit".

---

**2.** Appellant's challenge to the legality of his arrest was first raised at his suppression hearing, when he sought to have these items of evidence suppressed as the fruits of an illegal arrest. If an arrest is legal, the evidence can be admitted at trial. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**3.** 19 P.S. § 11 provided:
§ 11. Arrest beyond territorial limits in pursuit of felon
Any police officer in the employ of a county, city borough, town or township may arrest, with or without a warrant, any felon beyond the territorial limits of the political subdivision employing such officer for a felony committed by the felon within the political subdivision employing the police officer if such officer continues in pursuit of the felon after commission of the felony.
This provision was repealed, Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1362], effective June 27, 1978. It was replaced by 42 Pa.C.S. § 8901, Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978, which, in turn, was subsequently repealed. *See supra* note 1.

*Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976).[4] However, the United States District Court for the Eastern District of Pennsylvania did interpret that very word as used in dealing with former 19 P.S. § 11, our statute's predecessor in *United States v. Getz,* 381 F.Supp. 43 (E.D.Pa., 1974), *aff'd,* 510 F.2d 971 (3rd Cir., 1975), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105 (1975). The District Court holding in that case has become the benchmark for analyzing pursuit cases. *Commonwealth v. Stasiak,* 305 Pa. Superior Ct. 257, 451 A.2d 520 (1982); *Commonwealth v. Brown,* 298 Pa. Superior Ct. 11, 444 A.2d 149 (1982); *Commonwealth v. Fiume,* 192 Pa. Superior Ct. 54, 436 A.2d 1001 (1981).

The controlling statute, 42 Pa.C.S. § 8901, was substantially a re-enactment of 19 P.S. § 11.[5] That re-enactment, Section 8901, provided:

§ 8901. Intrastate hot pursuit

Any police officer of any political subdivision may arrest with or without warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision *if the officer continues in pursuit of such person after commission of the offense.* The police officer shall exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision.

**4.** Both *England* and *Davis* involved arrests by police officers pursuant to valid warrants, which were made outside their jurisdictions. No pursuit of any kind was involved. Section 11 came into play because of defendants' arguments that Section 11 had impliedly repealed 19 P.S. § 3, authorizing the execution of arrest warrants beyond the territorial jurisdiction of the issuing magistrate. The Court in both cases rejected this contention. The *Davis* Court noted, however, that 19 P.S. § 11 did "not limit an arresting officer's jurisdiction to 'hot' pursuit of felons." 466 Pa. at 108 n. 4, 351 A.2d at 645 n. 4.

**5.** *See* the Official Source Note to Section 8901. *See also Commonwealth v. Brown, supra* 298 Pa. Superior Ct. at 15 n. 5, 444 A.2d at 151 n. 5.

Emphasis added.[6] It carried the phrase "continues in pursuit" over from former 19 P.S. § 11. It was this phrase which the *Getz* court, in rejecting a defense claim identical to the one made here, interpreted, holding:

> Defendants argue that the arrest was invalid because the officers were not in "hot" pursuit. Apparently, defendants contemplate that only a fender-smashing Hollywood style chase scene would satisfy the requirement of the statute. We do not read the act so restrictively. The statute on its face provides only that the arrest may be effected beyond the territorial limits of the officers' jurisdiction so long as "such officer continues in *pursuit* of the offender ..." It does not specify that the officer must be in "hot" pursuit. The phrase "continues in pursuit" supports the conclusion that the statute contemplates "fresh pursuit". In the instant case, Officers Young and Scalzo were in continuous pursuit of the evasive robbers from the time of the initial communication at 2:20 P.M. until the arrest at 2:55 P.M., a period of time encompassing 35 minutes. The officers proceeded diligently in their search for the fleeing robbers and there was no hiatus or interruption in their efforts. Accordingly, we conclude that the arrest was made beyond the territorial limits of the officers' jurisdiction, while the

**6.** Section 8901 was repealed in 1982 and replaced by 42 Pa.C.S. § 8953, which provides in relevant part:

§ 8953. Statewide municipal police jurisdiction

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . . .

(2) Where the officer is in hot pursuit of any person for any offense which was committed, *or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit* of the person after the commission of the offense.

Emphasis added.

officers were in pursuit of the felons within the purview of 19 P.S. § 11.

381 F.Supp. at 46 (emphasis in original).

■ Appellant's argument fares no better. As in *Getz*, police continuously pursued appellant from the time Irvin reported the robbery until the arrest, an uninterrupted period of about 35 minutes. The arresting officer, knowing that all other routes were covered, followed appellant along the one remaining and caught up with him in Pittsburgh. His pursuit was fresh, continuous and uninterrupted. As Superior Court stated in *Commonwealth v. Brown* in discussing the pursuit and arrest of Brown and his co-defendant Banks:

> We conclude that a liberal, common sense interpretation of the statute [42 Pa.C.S. § 8901] requires that the arrest made by the Williamsport police be held legal. Their pursuit of four felons who committed a robbery within their jurisdiction was fresh (they began searching for Banks immediately upon hearing the broadcast of the robbery), continuous (the entire thirty minute period between notice of the crime and arrival at the Banks home was spent investigating the robbery and searching for the robbers), and uninterrupted (no other crimes were reported or calls were received to take those police units away from the investigation and pursuit of the robbers). Therefore, we hold that the arrest of appellants beyond the territorial limits of the City of Williamsport was legal, and the lower court's decision refusing to suppress evidence because of an illegal arrest was proper.

298 Pa. Superior Ct. at 19, 444 A.2d at 153. We find this analysis persuasive in the present case. *See also Stasiak, supra* (officer responding to burglary call within one minute and seeing a car at the county line which matched that described by witnesses to the burglary was in "pursuit", making arrest legal under 42 Pa.C.S. § 8901).

■ We pause only briefly to consider appellant's argument that the title of Section 8901, "Intrastate hot pursuit," determines the proper interpretation of the statute. While

1 Pa.C.S. § 1924 does indeed provide that "[t]he title ... of a statute may be considered in the construction thereof", that section also provides that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute *shall not be considered to control ...*" Emphasis added. It is also a "well-established rule" that the title "cannot control the plain words of the statute" and that even in the case of ambiguity it may be considered only to "resolve the uncertainty." *Sutherland Statutory Construction* § 47.03 (Sands 4th ed. 1973). We do not find the word "pursuit" ambiguous. Therefore, its interpretation in *Getz*, *Brown* and *Stasiak*, as including both classic "hot pursuit" and "fresh" or "continuous" pursuit is correct.[7]

■ Appellant's argument that the officer had insufficient information to justify his arrest has no merit. The facts plainly show that the officer had enough information to give him probable cause to arrest appellant. We need not consider the Commonwealth's argument that the appropriate standard for determining the legality of an arrest in pursuit cases, which do not involve Fourth Amendment principles governing unreasonable seizures, should be the less stringent standard of "reasonable belief".

Appellant's arrest was proper under 42 Pa.C.S. § 8901. Therefore, we affirm Superior Court's order.

McDERMOTT, J., files a concurring opinion.

McDERMOTT, Justice, concurring.

In *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court drew a distinction between the probable cause necessary to effect an arrest, and the reasonable cause required to permit the stopping of an individual; and held that reasonable cause was sufficient to justify a "stop". A similar distinction is appropriate in the present case.

I would hold that a pursuing officer need only have reasonable cause to pursue a suspect across the territorial

7. *See* note 5, *supra.*

limits of his primary jurisdiction. I join, however, in the opinion of the majority, since the "pursuit" in question was justified even under the more stringent standard of probable cause.