687 A.2d 1123

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gloria HIGHHAWK, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1996.

Filed Dec. 16, 1996.

Reargument Denied Feb. 19, 1997.

188

Rita D. Hathaway, Assistant District Attorney, Greensburg, for the Commonwealth, appellant.

John D. Ceraso, New Kensington, for appellee.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

In the early morning hours of June 13, 1995, appellee Gloria Highhawk brought heroin to the residence of Steve Wilson for recreational use. She injected the drug into Wilson, a quadriplegic, at his request. Shortly thereafter, Wilson became

unresponsive and medical personnel were summoned. Wilson was taken to Citizen's General Hospital where he was later pronounced dead as a result of acute heroin toxicity. Highhawk was subsequently arrested and charged by information with drug delivery resulting in death pursuant to 18 Pa.C.S.A § 2506.

On October 23, 1995, Highhawk filed a petition seeking to quash the information. Following a hearing, the Honorable Gary P. Caruso of the Court of Common Pleas of Westmoreland County entered an order dated January 5, 1996, stating that the information would be quashed unless it was amended to substitute the existing charge with a charge of general criminal homicide, 18 Pa.C.S.A. § 2501. In support of this order, Judge Caruso found the section of the Crimes Code under which Highhawk was originally charged, 18 Pa.C.S.A § 2506, to be no more than a sentencing statute pursuant to which it was improper to charge her with a crime. The Commonwealth appeals this decision asserting that this order substantially impairs the prosecution. *See* Pa.R.A.P. 311(d). In advancing its claim, the Commonwealth argues that 18 Pa.C.S.A. § 2506 defines a substantive crime and that the trial court erred in holding it to be a mere sentencing provision.

██ The statutory provision of the Crimes Code at issue states:

### § 2506. Drug delivery resulting in death

**(a) General rule.**—A person commits murder of the third degree who administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act,[1] and another person dies as a result of using the substance.

**(b) Mandatory minimum sentence.**—A person convicted under subsection (a) shall be sentenced to a mandatory minimum term of imprisonment of five years and a fine of

$15,000, or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity.

**(c) Proof of sentencing.**—Provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

**(d) Mandatory sentencing.**—There shall be no which this section is applicable a lesser sentence than provided for herein or to place the offender on probation, parole, work release or prerelease or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than provided herein. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided herein. Disposition under section 17 or 18 of The Controlled Substance, Drug, Device and Cosmetic Act[2] shall not be available to a defendant to which this section applies.

**(e) Appellate review.**—If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

**(f) Forfeiture.**—Assets against which forfeiture has been filed and is pending or against which the Commonwealth has indicated an intention to file a forfeiture petition shall not be subject to a fine. Nothing in this section shall prevent a fine from being imposed on assets which have been subject to an unsuccessful forfeiture petition.

1 35 P.S. § 780–113(a)(14), (30).

2 35 P.S. §§ 780–117, 780–118.

18 Pa.C.S.A. § 2506.

We are called upon to interpret, for the first time, the meaning of this statutory provision.[1] In doing so, it is necessary for us to employ the provisions of the Statutory Construction Act, 1 Pa.C.S.A. § 1901 *et seq. Commonwealth v. Henderson,* 444 Pa.Super. 170, 177–79, 663 A.2d 728, 732 (1995) (*en banc*). "In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words." *Commonwealth v. Lopez,* 444 Pa.Super. 206, 210, 663 A.2d 746, 748 (1995) (citing 1 Pa.C.S.A. § 1903(a)). A presumption exists that in drafting a statute, the General Assembly intended the entire statute to be effective. *Id.* Consequently, when interpreting one subsection of a statute, courts must read that subsection not by itself, but with reference to, and in light of, the other subsections. *Id. See also Commonwealth v. Mayhue,* 536 Pa. 271, 639 A.2d 421 (1994). Reading the statute at issue in the case *sub judice* consistent with these guidelines, it is evident that it is unclear and ambiguous.

The plain language of subsection (a) of 18 Pa.C.S.A. § 2506 appears to define the crime of third-degree murder in the context of certain violations of the Controlled Substance, Drug, Device and Cosmetic Act. This reading is corroborated by subsection (b) which refers to a "convict[ion] under subsection (a)" and thereafter imposes a mandatory minimum sentence for such. Confusion occurs, however, when attempting to reconcile subsection (c) with these earlier subsections. The initial inconsistency arises with the language contained in the first sentence of subsection (c) which states that the "[p]rovi-

1. Our research reveals that no appellate courts of this Commonwealth have previously interpreted 18 Pa.C.S.A. § 2506 or reviewed a conviction thereunder.

sions of this section shall not be an element of the crime." [2] It is a fundamental notion of our law that any statute that defines a substantive crime must inform an individual as to what behavior is prohibited and, therefore, set forth the elements constituting such proscribed conduct. *Commonwealth v. Westcott*, 362 Pa.Super. 176, 523 A.2d 1140 (1987), *alloc. denied*, 516 Pa. 640, 533 A.2d 712 (1987). Further inconsistencies are presented by the remainder of subsection (c). Specifically, subsection (c) states that "reasonable notice of the Commonwealth's intention to proceed under [section 2506] shall be provided after conviction and before sentencing" and "[t]he applicability of [section 2506] shall be determined at sentencing ... by a preponderance of the evidence." The applicability of a section under which an individual is charged with a substantive crime must be determined prior to prosecution for violation of such. *Westcott, supra.* If section 2506 did indeed define a new crime under which prosecution was appropriate, it would not be necessary to determine the applicability of the section at the time of sentencing by a preponderance of the evidence since the crime would already have been proven beyond a reasonable doubt.

Due to the ambiguity of 18 Pa.C.S.A. § 2506, we must look beyond the statutory language to determine the intent of the General Assembly in enacting such. *Commonwealth v. Wooten*, 519 Pa. 45, 53–55, 545 A.2d 876, 880 (1988). At the outset, we note that "courts are to strictly construe penal statutes, and ... any ambiguity contained in such acts must be interpreted in favor of the accused and against the prosecution." [3] *Commonwealth v. Driscoll*, 485 Pa. 99, 107, 401 A.2d 312, 316 (1979) (citing 1 Pa.C.S.A. § 1928(b)(1)). Nevertheless, we are not required to interpret the words of a criminal statute in their narrowest sense or disregard evident legislative intent. *Wooten*, 519 Pa. at 51–53, 545 A.2d at 879;

2. We note that the plain reference in subsection (c) to "this section" causes its terms to apply to the entire statute at issue. *See Lopez, supra.*

3. Penal statutes are those which define criminal offenses and specify their corresponding punishment. *Henderson*, 444 Pa.Super. at 179–81, 663 A.2d at 733.

*Westcott,* 362 Pa.Super. at 194, 523 A.2d at 1149 ("strict construction of penal statutes should not be allowed to defeat the policy and purpose underlying [the] enactment"). "Indeed, it is a clear principle of our jurisprudence that where a statute is unclear on its face, resort must be taken to the intent of the General Assembly in enacting the provision." *Id.* (citing 1 Pa.C.S.A. § 1921(a)). In so doing, we are to presume that the General Assembly did not intend a result that is absurd, impossible of execution, or unreasonable. *Commonwealth v. Stewart,* 375 Pa.Super. 585, 593, 544 A.2d 1384, 1388, *alloc. denied,* 520 Pa. 604, 553 A.2d 967 (1988). Further, in construing legislative intent, the Court may look to the following factors:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c). *See also Henderson,* 444 Pa.Super at 177–79, 663 A.2d at 732. Comments made by legislators during the enactment of a statute may also be considered while examining the contemporaneous legislative history. *Id.; Commonwealth v. Berryman,* 437 Pa.Super. 258, 267–69, 649 A.2d 961, 966 (1994) (*en banc*), *alloc. denied,* 541 Pa. 632, 663 A.2d 685 (1995). Reviewing section 2506 in light of this precedent, we find that it does indeed define the substantive crime of third-degree murder in those cases where death results from certain conveyances of controlled substances or counterfeit controlled substances in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

In determining the intent of the General Assembly, we begin with an examination of the legislative history of 18

Pa.C.S.A. § 2506. This section originated in the House of Representatives in 1989 as House Bill 1280 and, initially, contained only subsections (a) and (b). Upon consideration by the Senate, however, Senator D. Michael Fisher proposed amendment No. A4141 entitled "An Act amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, defining the offense of drug delivery resulting in death; and providing penalties." 1989 Pa. Legislative Journal–Senate, at 1531. Subsequently, the House considered and concurred with this Senate amendment which resulted in the addition of subsections (c) through (f) to the pending legislation. During such consideration, Representative Allen G. Kukovich addressed the House as follows:

> Mr. KUKOVICH. Again, Mr. Speaker, this is part of the drug package and the House bills that have come back for concurrence. There has been a Senate amendment which does not violate the spirit of what the House did when they passed this legislation. There has been language added that is considered to be boilerplate language for mandatory minimum sentences, and by that, I mean there is a certain burden of proof for that type of sentencing. It was not in this bill when it passed the House. This is simply corrective.
>
> I would ask for a "yes" on concurrence.

1989 Pa. Legislative Journal–House, at 2195.

This legislative history establishes that, consistent with the clear language of subsections (a) and (b) standing alone, as discussed above, the *original* House Bill intended to set forth a new crime. Representative Kukovich's comments, while not dispositive, aid us in finding that amendment No. A4141 sought merely to provide guidelines, collateral to the newly defined crime, relating to asset forfeiture, limitations on a sentencing court's exercise of discretion, and appellate review of a sentencing court's refusal to apply the section. *See Berryman, supra.* The addition of language pursuant to the amendment was not, therefore, intended as a change in legislative intent. *Compare Meier v. Maleski,* 670 A.2d 755, 759 (1996) ("A change in the language of a statute ordinarily

indicates a change in legislative intent."). In addressing the various issues incident to the creation of the new offense, however, the amendment added boilerplate language which, as demonstrated *supra,* inadvertently resulted in an unclear and ambiguous statute. The cause of the resulting lack of clarity in the statute is evident from a review of various other statutes dealing with mandatory or enhanced sentences which contain language similar to that added to section 2506 by the amendment. *See, e.g.,* 18 Pa.C.S.A. § 7508 (drug trafficking sentences and penalties); 42 Pa.C.S.A. § 9712 (sentences for offenses committed with firearms); 42 Pa.C.S.A. § 9713 (sentences for offenses committed on public transportation); and 42 Pa.C.S.A. § 9714 (sentences for second and subsequent offenses). The crimes for which these provisions provide mandatory or enhanced sentences appear in sections of the Crimes Code separate from those sections which define the criminal conduct itself. Accordingly, the boilerplate language of subsection (c) which is presently adding confusion to the reading of section 2506 is necessary in these other provisions to ensure their integrity as no more than sentencing provisions.

A review of other factors pertinent to establishing the intent of the General Assembly supports our finding that 18 Pa. C.S.A. § 2506 was intended to set forth a new crime. Foremost, we find our interpretation to be in accord with the objective to be attained and the mischief to be remedied by the General Assembly upon enactment of 18 Pa.C.S.A. § 2506 in 1989. *See* 1 Pa.C.S.A. § 1921(c)(3), (4). Section 2506 clearly represents an attempt to control the number of deaths related to controlled substances.[4] This is substantially accomplished by establishing a mandatory minimum sentence of five years for an individual convicted of third-degree murder under section 2506. In the absence of such a directive, the sentence to be imposed for third-degree murder is subject to the discretion of the sentencing court. *See, e.g., Commonwealth v.*

4. In 1988, the year prior to enactment of 18 Pa.C.S.A. § 2506, approximately 25,000 persons were charged with drug related crimes. Bureau of Research and Development, Pennsylvania State Police, Uniform Crime Report A15 (1988).

*Smith,* 543 Pa. 566, 568–70, 673 A.2d 893, 894 (1996) (in applying the sentencing guidelines to a conviction of third-degree murder, the sentencing court departed from the mitigated range and imposed a sentence of two-to-four years to be followed by ten years of probation); *Commonwealth v. Scales,* 437 Pa.Super. 14, 16–18, 648 A.2d 1205, 1206 (1994) (trial court sentenced defendant to four-to-ten years' imprisonment for third-degree murder), *alloc. denied,* 540 Pa. 640, 659 A.2d 559 (1995).

The title of the amendment to House Bill 1280, "An Act amending Title 18 (Crimes and Offenses) of the Pennsylvania consolidated statutes, defining the offense of drug delivery resulting in death; and providing penalties [for such]", is corroborative of our finding. The use of the words "defining the offense of" in this title clearly evidence an intent to establish a new criminal act. *See Boring v. Erie,* 434 Pa.Super. 40, 641 A.2d 1189 (1994) (in cases where the language of a statute is ambiguous, the title may be considered in resolving the uncertainty) (citing *Commonwealth v. Magwood,* 503 Pa. 169, 176–77, 469 A.2d 115, 119 (1983)). *See also* 1 Pa.C.S.A. § 1924. Finally, we note that our interpretation of section 2506 is consistent with that of the Pennsylvania Commission on Sentencing.[5] This Commission adopted sentencing guidelines, *see* 42 Pa.C.S.A. § 9721, wherein section 2506 was included as a substantive crime classified as a felony of the first degree. *See* 1 Pa.C.S.A. § 1921(c)(8).

"[Having ascertained] the intent of the General Assembly[,] that intent cannot be ignored, rather, it must be given effect."[6] *Commonwealth v. Besch,* 544 Pa. 1, 10, 674 A.2d 655,

---

5. The Pennsylvania Commission on Sentencing is an 11–person agency of the General Assembly. 42 Pa.C.S.A. § 2151.

6. Highhawk argues that the trial court was correct in finding section 2506 to be a sentencing provision. In urging us to hold similarly, Highhawk cites 1 Pa.C.S.A. § 1933 which states that "whenever, in the same statute, several clauses are irreconcilable, the clause last in order of date or position shall prevail." Based thereon, Highhawk argues that sections (c) through (f) should be determinative of the meaning of section 2506. We disagree since the application of this rule "would result in a construction inconsistent with the manifest intent of the General Assembly." 1 Pa.C.S.A. § 1901.

659 (1996); 1 Pa.C.S. § 1921(a). Accordingly, we hold that 18 Pa.C.S.A. § 2506 defines a substantive crime and sets forth the penalties for a violation of the prohibited conduct.

 In response to the Commonwealth's appeal, Gloria Highhawk argues that to the extent section 2506 sets forth a new crime, it is constitutionally void for vagueness. At the outset, we note that "[i]n ascertaining the legislative intent of a particular statute[,] it is presumed, *inter alia,* that the legislature did not intend a result that is ... violative of the United States Constitution or the Constitution of this Commonwealth." *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 430–31, 664 A.2d 84, 87 (1995). Additionally, "a legislative enactment enjoys a presumption in favor of its constitutionality and will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution. All doubts are to be resolved in favor of constitutionality." *Westcott,* 362 Pa.Super. at 196, 523 A.2d at 1150.

 With these standards in mind, we turn to a review of the merits of Highhawk's claim.

It is well settled that "[a] criminal statute must give reasonable notice of the conduct which it proscribes to a person charged with violating its interdiction. Statutes which are so vague that they fail to provide such notice violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Commonwealth v. Heinbaugh,* 467 Pa. 1, 5, 354 A.2d 244, 246 (1976). *See also Commonwealth v. Barnhart,* 345 Pa.Super. 10, 497 A.2d 616 (1985).

*Westcott,* 362 Pa.Super. at 195, 523 A.2d at 1149. "[T]o survive a challenge of denial of due process[,] a statute may not be so vague that men of common intelligence must necessarily guess at its meaning...." *Commonwealth v. Trill,* 374 Pa.Super. 549, 589, 543 A.2d 1106, 1126 (1988), *alloc. denied,* 522 Pa. 603, 562 A.2d 826 (1989).

However, the constitutional prohibition against vagueness does not invalidate every statute which could have been

drafted with greater precision. Due Process requires only that individuals may conform their conduct so as to avoid that which the law forbids. *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).

*Westcott*, 362 Pa.Super. at 196, 523 A.2d at 1149–50. Employing this precedent, we find that 18 Pa.C.S.A. § 2506 is void for vagueness.

In attempting to define third-degree murder to include that conduct which is prohibited by subsection 2506(a), the legislature set forth the elements of the offense therein.[7] For example, subsection 2506(a) contains a provision requiring the administration of a controlled substance that causes the death of the user of such.[8] As we have already established, however, the plain language of subsection (c) prevents these provisions from becoming elements of the crime and renders section 2506 relevant only upon conviction. As a result of this patent contradiction in section 2506, the statute in question fails to provide fair notice of the prohibited conduct and is,

7. An "element of an offense" is defined as follows:

 *§ 103. Definitions*

 * * *

 *"Element of an offense."* Such conduct or such attendant circumstances or such a result of conduct as:
 (1) is included in the description of the forbidden conduct in the definition of the offense;
 (2) establishes the required kind of culpability[.]
 18 Pa.C.S.A. § 103.

8. The Commonwealth contends that section 2506 eliminates the *mens rea* requirement in that a defendant can be found guilty of violating such regardless of his intent as it relates to the death of the victim. In light of our ultimate disposition of this case, we decline to address the issue of the degree of culpability required to support a conviction under section 2506. If we were to decide this matter, we would be rendering an advisory opinion. *See Sedat, Inc. v. Fisher*, 420 Pa.Super., 469, 477, 617 A.2d 1, 4 (1992) ("An advisory opinion is one which is unnecessary to decide the issue before the court, and it is true that the courts of this Commonwealth are precluded from issuing such advisory opinions."). We do note, however, that certain other states such as New Jersey have adopted strict liability statutes to protect society from death caused by the distribution of illegal drugs. *See, e.g.*, N.J.S.A. 2C:35–9.

therefore, unable to withstand constitutional scrutiny.[9] *See Trill, supra; Westcott, supra.*

Since we declare 18 Pa.C.S.A. § 2506 to be unconstitutional, the order of the Court of Common Pleas of Westmoreland County requiring amendment of the information charging Gloria Highhawk is affirmed. *See Lincoln Ave. Indus. Park v. Norley,* 450 Pa.Super. 621, 630, 677 A.2d 1219, 1223 (1996) ("On appeal, our Court will affirm a trial court's Order if it is correct on any legal ground or theory, regardless of the reason or theory relied on below.") (quoting *In re Barnes Foundation,* 443 Pa.Super. 369, 376, 661 A.2d 889, 893 (1995)).

Order affirmed.

JOHNSON, J., files a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting:

The Honorable Gary P. Caruso determined that conflicts between subsections (a) and (c) of 18 Pa.C.S. § 2506 makes the statute impossible to apply. With this finding, I agree. When read as a whole, the statute is fatally confusing, in part

**9.** We pause to address the applicability of 1 Pa.C.S.A. § 1925 which concerns the severability of statutory provisions in the constitutional construction of statutes. This section states:

§ 1925. *Constitutional construction of statutes*

The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed that the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with legislative intent.

1 Pa.C.S.A. § 1925. We find that this provision is not applicable to section 2506. Section 1925 concerns statutes which are "partially valid and partially invalid" and allows for the separation of statutory provisions so as to effectuate those which are valid. *Heller v. Frankston,* 504 Pa. 528, 536–38, 475 A.2d 1291, 1296 (1984). *See also Saulsbury v. Bethlehem Steel Co.,* 413 Pa. 316, 318–20, 196 A.2d 664, 666 (1964). The unconstitutionality of 18 Pa.C.S.A. § 2506, however, arises from inconsistencies among the provisions of this statute. As a result, the entire statute is inherently invalid leaving no valid provisions to sever.

because subsection (c) clearly prohibits subsection (a) from providing the additional elements needed to create a new offense. Judge Caruso went on to conclude that the statute creates a mandatory minimum sentence for a person convicted of third degree murder when the death is caused by the administration of a controlled substance. I believe Judge Caruso was also correct in this conclusion. I therefore join so much of my colleagues' decision as finds that § 2506(a) cannot withstand constitutional scrutiny to the extent that it attempts to set forth a new, substantive crime. However, I am unable to agree that the entire section must be declared unconstitutional.

Our general severability statute reads as follows:

### § 1925. Constitutional construction of statutes

The provisions of every statute shall be severable. If any provisions of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925.

There is a clearly expressed legislative preference to retain the viability of the legal portions of a statute, if reasonably possible. *See Commonwealth, Dep't of Educ. v. First School,* 471 Pa. 471, 478, 370 A.2d 702, 705 (1977). Thus, if a statute is partially valid and partially invalid, and "if the provisions are distinct and not so interwoven as to be inseparable ..., courts should sustain the valid portions." *Saulsbury v. Bethlehem Steel Co.,* 413 Pa. 316, 320, 196 A.2d 664, 666 (1964).

I now turn to applying the severability principle to 18 Pa.C.S. § 2506. Considering, first, whether the provisions are distinct, I find that subsection (a), on its face, is physically distinct from the balance of the section. More importantly, the content of subsection (a), dealing with the definition of the crime, drug delivery resulting in death, stands apart in its function from the remaining subsections that deal with sentencing, subsections (b), (c) and (d), appellate review, subsection (e), and forfeiture, subsection (f).

The question next to be answered is whether the invalid subsection, (a), is so interwoven with the valid provisions as to be inseparable. Subsection (a) does nothing more than set forth a definition for a "new crime", third degree murder where the defendant has delivered a controlled substance in violation of the Controlled Substance, Drug, Device and Cosmetic Act and another person dies as a result of using the substance. I would conclude that our legislature would have enacted the sections setting forth the penalties for this activity, even if it had known that its attempted definition of the crime itself was incomplete. When read as a mandatory minimum sentencing statute, all the subsections following subsection (a) remain viable and capable of full application without regard to the continuing vitality of subsection (a). Accordingly, I would conclude that subsections (b) through (f), since they are distinct from, and not interwoven with, subsection (a), remain intact.

While not stating so explicitly, my colleagues' analysis makes it clear that they would find error in Judge Caruso's failure to declare the entire statute unconstitutional. I disagree. Judge Caruso applied the correct principles of statutory construction in declining to find the entire statute unconstitutional, while finding that the statute can be read as a sentence enhancement provision. Since I believe this is the mandate of statutory construction as laid down by our General Assembly in 1 Pa.C.S. § 1925, *supra*, I must respectfully dissent.

I would affirm the order of Judge Caruso that directed the Commonwealth to amend their complaint upon pain of dis-

missal of the information. The order we here review does not require that we find Act No. 109 of 1989, in its entirety, unconstitutional. Hence this dissent.