J-E01002-23

2023 PA Super 117

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VINCENT SMITH | : | |
| | : | |
| Appellant | : | No. 1256 WDA 2021 |

Appeal from the Judgment of Sentence Entered June 30, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008964-2018

BEFORE:  PANELLA, P.J., BENDER, P.J.E., LAZARUS, J., OLSON, J., STABILE, J., DUBOW, J., NICHOLS, J., McLAUGHLIN, J., and McCAFFERY, J.

OPINION BY McCAFFERY, J.:                           **FILED: JUNE 30, 2023**

Vincent Smith (Appellant) appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his open guilty pleas to two counts of voluntary manslaughter and four counts of arson endangering persons.[1]  The four counts of arson endangering persons relate to the presence of four police officers when Appellant started the fire.  As an issue of first impression, Appellant argues the trial court's imposition of multiple sentences for these counts was illegal, as the arson endangering persons statute — Subsection 3301(a)(1)(i) of the Crimes Code — provides for a single sentence regardless of the number of victims.  We hold: (1) the unit of prosecution for this offense is **not** merely the starting of a fire, but the intentional starting of a fire that recklessly places another in danger of death

---

[1] 18 Pa.C.S. §§ 2503(b), 3301(a)(1)(i).

or bodily injury; (2) Subsection 3301(a)(1)(i) was written with regard to an individual person being placed in danger of death or serious bodily injury;[2] and (3) a defendant may be convicted of and sentenced on separate counts when there is one arson but more than one victim. We thus affirm.

## I. Facts & Procedural History

At the plea hearing, Appellant generally agreed with the facts set forth in the affidavit of probable cause,[3] which stated the following: On February 26, 2018, four police officers went to the rowhome at 103 Penfield Place, Pittsburgh, attempting to locate a missing person, John Van Dyke. *See* Affidavit of Probable Cause, 2/28/18, at 3. The officers forcibly entered the home and repeatedly announced their presence. *Id.* Once inside they heard someone on the second floor say, "Steve's not here[,]" and the officers again announced their presence and purpose. *Id.* The officers then

> observed [Appellant] striking matches and tossing them on the floor. The matches started an instant fire[, which] began traveling down the stairs toward the officers. The officers immediately exited the residence and took positions . . . outside[. Appellant] was eventually rescued by firemen and . . . treated for smoke inhalation. . . .

Trial Ct. Op., 4/6/22, at 2.

---

[2] *See Commonwealth v. Frisbie*, 485 A.2d 1098, 1100 (Pa. 1984).

[3] *See* N.T. Plea H'rg, 4/5/21, at 16-17.

The bodies of John Van Dyke and Steven Pariser were recovered from the residence. Both "had obvious trauma to the back of their heads and their deaths were ruled as homicides." Trial Ct. Op. at 2. Appellant told detectives:

> [H]e was attacked by the men and he fought back. He . . . admitted that he [threw] them down a flight of steps[.] He covered them with blankets and bags. He further told the detectives that he wanted to kill himself so he took some pills and spread lighter fluid all over the residence.[4]

*Id.*

Appellant was charged with homicide, various counts of arson, and related offenses. On April 5, 2021, he entered open guilty pleas, all graded as felonies of the first degree, to: (1) two counts of voluntary manslaughter, representing the two victims killed; and (2) four counts of arson endangering persons, for the four police officers present when Appellant started the fire.

On June 30, 2021, the trial court imposed the following sentences, all to run consecutively: (1) for the two voluntary manslaughter counts, two terms of five to 10 years' imprisonment; and (2) for the four arson endangering persons count, four terms of four to eight years. Therefore, the aggregate sentence was 26 to 52 years' imprisonment.[5]

Appellant filed a timely counseled post-sentence motion, challenging the discretionary aspects of his sentence and the voluntariness of his guilty plea.

---

[4] Appellant had killed the two victims approximately five days before the fire. *See* N.T. Post-Sentence Mot. H'rg, 8/23/21, at 12.

[5] At the time of sentencing, Appellant was 61 years old.

The trial court conducted a hearing on August 23, 2021. Based on Appellant's arguments, the court considered an additional question, whether the commission of arson endangering persons was "a one-act event," regardless of the number of potential victims — in other words, whether an individual could be sentenced on multiple counts of this offense, based on a single act of arson that placed more than one person at risk. **See** N.T., 8/23/21, at 26-27. The court directed the parties to file supplemental briefs addressing this issue, and they complied.

The trial court then conducted a second post-sentence hearing on September 20, 2021. Both parties addressed: (1) the recent decision in **Commonwealth v. Satterfield**, 255 A.3d 438 (Pa. 2021) (discussed **infra**), which held the "unit of prosecution" of leaving the scene of an accident involving death or personal injury[6] was the defendant's single act of leaving, regardless of the number of victims, and thus only one conviction of this offense and one sentence were proper; and (2) **Commonwealth v. Frisbie**, 485 A.2d 1098 (Pa. 1984) (discussed **infra**), which permitted separate sentences for recklessly endangering another person[7] (REAP), where there was one act by the defendant that endangered multiple victims. N.T. Post[-]sentencing Mot., 9/20/21, at 4-10, 12-17. The trial court ruled it was proper

---

[6] 75 Pa.C.S. § 3742.

[7] 18 Pa.C.S. § 2705.

to impose separate sentences on Appellant's arson endangering persons convictions, and thus denied his request for relief. *Id.* at 24.

Appellant filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

## II. Question Presented, Standards of Review & Arson Endangering Persons Statute

Appellant presents the following issue for our review:

> Did the trial court err in imposing multiple sentences for [Appellant's] convictions for arson pertaining to multiple endangered persons where the statute providing for the offense, properly construed according to the rules of statutory interpretation, provide for a single sentence regardless of the number of victims?

Appellant's Brief at 8.

We note Appellant's claim implicates the legality of his sentence, which presents a pure question of law; thus our scope of review is plenary, and our standard of review, *de novo*. **See Satterfield**, 255 A.3d at 442 (citation omitted). Resolution of Appellant's issue also involves interpretation of a statute, namely 18 Pa.C.S. § 3301(a)(1)(i), which likewise "presents a pure question of law; again, our scope of review is plenary, and our standard of review, *de novo*." **See id.**

At this juncture, we set forth the pertinent statutory definition of arson endangering persons:

**§ 3301.  Arson and related offenses.**

**(a) Arson endangering persons**.

(1) A person commits a felony of the first degree if he intentionally starts a fire . . . **and** if:

(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire . . . .

18 Pa.C.S. § 3301(a)(1)(i) (some emphasis added).

### III.  Parties' Arguments

Appellant argues the trial court erred in imposing multiple sentences for his arson endangering persons convictions, as the unit of prosecution is one arson, and not the endangerment to others.[8]  In support, he first contends the arson endangering persons statute is ambiguous.  Appellant's Brief at 16-17.  He proposes two possible interpretations of the statute: (1) first, that the statute primarily prosecutes arson, not endangerment of persons; and (2) on the other hand, that it prosecutes "arsons as ersatz crimes against persons." *Id.*

In support of his contention that the former interpretation should control, Appellant presents the following arguments.[9]  First, where there are

---

[8] We note Appellant does not challenge his multiple convictions of arson endangering persons, and instead only the consecutive sentences.

[9] Appellant does not present any discussion of his latter interpretation of the statute.

"two reasonable interpretations of a statute's unit of prosecution[, the courts] should adopt the more lenient one." Appellant's Brief at 19, *citing* ***Commonwealth v. Davidson***, 938 A.2d 198, 221 (Pa. 2007) ("[The United States] Supreme Court has explained that '[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.'") (citation omitted). Second, the titles of both Section 3301 ("Arson and related offenses") and Subsection 3301(a) ("Arson endangering persons") suggest their primary focus, or key element, is arson — and not endangerment. Appellant's Brief at 17. Meanwhile, "[c]rimes primarily focused on injury or danger to persons are defined elsewhere" in the Crimes Code. ***Id.*** at 18, *citing* "18 Pa.C.S. §§ 2501 *et seq."* Finally, although the arson endangering persons statute contains an element of endangerment to "another" person, in the singular, "our legislature has provided that singular words . . . subsume their plural coordinate terms[.]" Appellant's Brief at 16-17, *citing* 1 Pa.C.S. § 1902 ("The singular shall include the plural, and the plural, the singular.").

Furthermore, Appellant asserts the trial court failed to conduct any "textual or other statutory analysis[,] but instead rejected [his] claim . . . on the ground" that the arson endangering persons statute is unlike the statute addressed in ***Satterfield*** — leaving the scene of an accident involving death or personal injury. Appellant's Brief at 19. While Appellant agrees the ***Satterfield*** statute is distinguishable, he maintains that "it does not follow

that Section 3301's unit of prosecution is [an] endangerment." *Id.* at 20. Appellant contends that in *Satterfield*, the Pennsylvania Supreme Court concluded that a vehicle "**accident** was [the] key element, and [it was] immaterial that additional elements gave rise to [higher] penalties." *Id.*

Finally, Appellant challenges the trial court's reasoning, that it would be absurd for a person to be charged with only one arson causing murder, under 18 Pa.C.S. § 3301(a)(2),[10] if more than one person died from an act of arson. Appellant's Brief at 21, *citing* Trial Ct. Op. at 7. Appellant reasons that in that scenario, a defendant could be charged with one count of arson endangering persons and multiple counts of murder. Appellant's Brief at 22. Appellant concludes this Court should vacate three of his arson endangering persons sentences.

The Commonwealth responds that the present sentencing issue is governed by *Frisbie*, 485 A.2d 1098, which Appellant does not address on appeal. In *Frisbie*, the defendant drove his car through a crowd injuring nine pedestrians. Commonwealth's Brief at 10. On appeal, the Pennsylvania Supreme Court upheld the imposition of separate sentences for nine counts of REAP, reasoning that the REAP statute's inclusion of the phrase, "another

---

[10] **See** 18 Pa.C.S. § 3301(a)(2) ("A person who commits arson endangering persons is guilty of murder of the second degree if the fire . . . causes the death of any person . . . .").

person," indicated "a separate offense is committed for each individual person placed in danger." *Id.* at 11, *citing **Frisbie***, 485 A.2d at 1100.

The Commonwealth further contends that Appellant's reliance on the title of Section 3301 is misplaced, as our Supreme Court has held the "headings prefixed to titles, . . . sections and other divisions of a statute shall not be considered to control." Commonwealth's Brief at 14, *citing **Commonwealth v. Magwood***, 469 A.2d 115, 119 (Pa. 1983). We agree with the trial court's analysis and the Commonwealth's discussion and therefore conclude Appellant is not entitled to relief.

## IV. Pertinent Authority

To resolve Appellant's issue, we must determine what our General Assembly fixed as the unit of prosecution for a violation of Section 3301(a)(1)(i), arson endangering persons. In ***Satterfield***, the Pennsylvania Supreme Court explained:

> The unit of prosecution is the actus reus that the General Assembly intended to punish. Put otherwise, the unit of prosecution is the minimum conduct that must be proven to obtain a conviction for the statute in question. Only a single conviction and resulting punishment may be imposed for a single unit of prosecution. As this Court has indicated, "[t]o determine the correct unit of prosecution, the inquiry should focus on whether separate and distinct prohibited acts . . . have been committed."

***Satterfield***, 255 A.3d at 445-46 (citation omitted).

This review involves statutory interpretation. The ***Satterfield*** Court further stated:

The best expression of legislative intent appears in the plain language of a statute. Words of a statute "shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). "[W]hen the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute under the pretext of pursuing its spirit."

*Satterfield*, 255 A.3d at 446 (some citations omitted).

We consider our Supreme Court's 1983 decision in *Frisbie*. In that case, the defendant, while fleeing from police officers, "drove his car through a crowded intersection and seriously injured nine pedestrians." *Frisbie*, 485 A.2d at 1099. He was convicted of, *inter alia*, nine counts of REAP and received nine consecutive sentences for each count. *Id.*

On appeal, the Pennsylvania Supreme Court considered whether the multiple sentences for REAP, arising from the defendant's single act that affected multiple victims, violated the double jeopardy clause of the Fifth Amendment of the United States Constitution. *Frisbie*, 485 A.2d at 1099. The Court reviewed the language of the REAP statute:

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place **another person** in danger of death or serious bodily injury.

*Id.* at 1100, *quoting* 18 Pa.C.S. § 2705 (emphasis in *Frisbie*). The *Frisbie* Court emphasized the phrase, "another person," and concluded that under the "fair import" of its terms, Section 2705 "was written with regard to **an individual person** being placed in danger of death or serious bodily injury[.]" *Frisbie*, 485 A.2d at 1100 (emphasis in original). Thus, the Court found, "a

- 10 -

separate offense is committed for each individual person placed in such danger." ***Id.***

> In further support, the Court considered:
>
> Where the legislature has intended to preclude multiple punishments for multiple injuries resulting from a single act, it has expressly done so. For example, in § 2707 of the Crimes Code, the legislature made it a crime to "throw . . . a rock, stone, brick, . . . or any deadly or dangerous missile . . . into a vehicle . . . that is occupied by **one or more persons** . . . ." 18 Pa.C.S.A. § 2707 (emphasis added). Similarly, § 2710 of the Crimes Code makes it a crime to commit an offense under any other provision of Article B (offenses involving danger to the person) "with malicious intention toward the race, color, religion or national origin **of another individual or group of individuals**." 18 Pa.C.S.A. § 2710 (emphasis added).
>
> Had the legislature intended to preclude multiple punishments under § 2705, that section would read: "a person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place **another person or persons** in danger of death or serious bodily injury."

***Frisbie***, 485 A.2d at 1100 (some citations omitted & paragraph break added). The Court thus upheld the imposition of multiple sentences upon the defendant. ***Id.*** at 1101.

Next, we review the 2021 decision in ***Satterfield***. The defendant, under the influence of alcohol, crashed his tractor-trailer into numerous vehicles, which were stopped. ***Satterfield***, 255 A.3d at 439. The defendant then fled from his vehicle. ***Id.*** "As a result of the crash, three people died and many others were injured." ***Id.*** The defendant entered open guilty pleas to, *inter alia*, three counts of Pennsylvania's so-called "hit-and-run" statute, or leaving the scene of an accident involving death or personal injury. ***Id.*** at 440. Each

count related to one of the three victims killed. *Id.* at 440-41. The trial court imposed three consecutive sentences on these counts. *Id.* at 441.

On appeal, our Supreme Court considered the defendant's claim that the imposition of separate sentences was illegal because he committed only a single violation of Section 3742. *Satterfield*, 255 A.3d at 445. That statute states, in pertinent part:

> **(a) General rule.—**The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible . . . and in every event shall remain at the scene of the accident until he has fulfilled the requirement of section 3744 (relating to duty to give information and render aid). . . .

*Satterfield*, 255 A.3d at 446, *quoting* 75 Pa.C.S. § 3742(a).

The *Satterfield* Court reasoned that "Section 3742(a) plainly instructs that a driver involved in an accident must '. . . remain at the scene of the accident until he has fulfilled the requirements of 3744 (relating to duty to give information and render aid).'" *Satterfield*, 255 A.3d at 447 (citation omitted). In other words, "[a] driver who leaves the scene of the accident prematurely[ ] violates the statute.[ ]" *Id.* at 447-48. "Based upon this statutory language, it is solely involvement in an accident that triggers the obligation to stop and remain at the scene." *Id.* at 448. Accordingly, the Court held "the unit of prosecution is the act of leaving the scene of an accident without first rendering aid and providing the information required by Section 3744.[ ]" *Id.* at 447 (emphasis omitted). In other words, the unit of

prosecution "does not depend upon the results of the accident, including the number of victims or the severity of their injuries." *Id.* at 448.

Because the unit of prosecution is the act of leaving the scene of an accident without rendering aid and providing information, the *Satterfield* Court concluded the defendant violated the statute only once — as "[t]here was only one accident scene at which [he] had a legal duty to remain[.]" *Satterfield*, 255 A.3d at 449-50. The Court thus vacated two of the defendant's three leaving the scene of an accident sentences, on the ground they were illegal. *Id.* at 451.

## V. Analysis

In its opinion, the trial court applied the "guidance" set forth in *Satterfield* in order to determine a criminal statute's unit of prosecution. Trial Ct. Op. at 5. The court reviewed the language of Subsection 3301(a)(1)(i), which provides:

> (1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, **and if**:
>
> (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire[.]

*Id.* at 6, *quoting* 18 Pa.C.S. § 3301(a)(1)(i) (emphasis added).

The trial court concluded this statute "is specifically focused on the individual risk of death or serious bodily injury caused to" another person.

- 13 -

Trial Ct. Op. at 6. It found the unit of prosecution is not merely an arson, but instead "the commission of an arson **that specifically recklessly places another person in danger** of death or bodily injury." **Id.** (emphasis added). It reasoned "the statute specifically requires proof of both an arson **and** that an enumerated person be placed in danger of death or bodily injury from the arson." **Id.** at 7 (some emphasis omitted & emphasis added). Thus, the court concluded, the proper interpretation of this statute permits separate sentences for each victim endangered by a defendant's conduct. **Id.**

We agree with the trial court's reasoning and, contrary to Appellant's argument, we conclude Section 3301(a)(1)(i) is unambiguous. First, applying our statutory interpretation principles and the discussion in **Satterfield**, we likewise conclude the General Assembly intended the unit of prosecution to be the defendant's commission of an arson **coupled with** their "recklessly plac[ing] another person in danger of death or bodily injury[.]" **See** 18 Pa.C.S. § 3301(a)(1)(i); **Satterfield**, 255 A.3d at 447. The plain meaning of the word, "and," at the end of Subsection (1) requires the Commonwealth to prove not only that a defendant "intentionally start[ed] a fire," but **also** that they "recklessly place[d] another person in danger of death or bodily injury[.]" **See** 18 Pa.C.S. § 3301(a)(1)(i); **Commonwealth v. Coleman**, 285 A.3d 599, 605 (Pa. 2022) ("[W]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]") (citation omitted).

As to whether the statute contemplates placing a single person in danger, or more than one person, we find **Frisbie** instructive.[11] The REAP statute at issue in that case and the pertinent arson endangering persons subsection bear similarities. A person commits REAP when they "recklessly engage[ ] in conduct which places or may place **another person** in danger of death or serious bodily injury." 18 Pa.C.S. § 2705 (emphasis added). The **Frisbie** Court emphasized the phrase, "another person" and, as discussed above, construed this language to mean "that § 2705 was written with regard to **an individual person** being placed in danger of death of serious bodily injury, and that a separate offense is committed for reach individual person placed in such danger." **Frisbie**, 485 A.2d at 1100. Similarly, the definition of arson endangering persons is the intentional starting of a fire "and" the "recklessly plac[ing] **another person** in danger of death or bodily injury[.]" **See** 18 Pa.C.S. § 3301(a)(1)(i) (emphasis added). Applying the rationale of **Frisbie**, we conclude the phrase, "another person," "was written with regard to **an individual person** being placed in danger of death of serious bodily injury," and thus separate offenses are committed for each person placed in such danger. Thus, separate sentences may be imposed. **See** 18 Pa.C.S. § 3301(a)(1)(i); **Frisbie**, 485 A.2d at 1100.

_____

[11] Although Appellant addressed **Frisbie** in the trial court proceedings, he wholly ignores it on appeal. **See** Commonwealth's Brief at 10.

- 15 -

To this end, we also disagree with Appellant's reliance on 1 Pa.C.S. § 1902, which states:

§ 1902.  Number; gender; tense.

The singular shall include the plural, and the plural, the singular. Words used in the masculine gender shall include the feminine and neuter.  Words used in the past or present tense shall include the future.

1 Pa.C.S. § 1902.  Appellant does not address the discussion in *Frisbie*, that "[w]here the legislature has intended to preclude multiple punishments for multiple injuries resulting from a single act, it has expressly done so." *See* *Frisbie*, 485 A.2d at 1100, *citing* 18 Pa.C.S.A. §§ 2707 (it is a crime to throw a rock or any deadly or dangerous missile into a vehicle "that is occupied by **one or more persons**"), 2710 (a person commits ethnic intimidation if they commit an offense "with malicious intention toward the race, color, religion or national origin of **another individual or group of individuals**").

### VI.  Conclusion

In sum, we conclude that under the plain language and meaning of Subsection 3301(a)(1)(i), within the arson endangering persons statute, the unit of prosecution is the intentional starting of a fire which recklessly places another person in danger of death or bodily injury.  *See* 18 Pa.C.S. § 3301(a)(1)(i).  Accordingly, a defendant may be convicted of and sentenced separately on multiple counts if one act of arson causes more than one person to be in danger of death or bodily injury.  Applying this holding to the case

*sub judice*, we affirm the separate sentences imposed on each of Appellant's four arson endangering persons convictions, and hold they are not illegal.

Judgment of sentence affirmed.

President Judge Panella, President Judge Emeritus Bender, Judge Olson, Judge Stabile, Judge Dubow, Judge Nichols and Judge McLaughlin join this opinion.

Judge Lazarus files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/23